UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH GOLDEN, ANGELO DEITOS,
EDWARD JONES, IDA THOMASON,
LUTHER PALMER, CAROLINE FORYS,
JOSEPHINE THOMAS, JOHN HOYLE,
STEPHEN SANTANGELO, ARTHUR SALLIS,
THELMA SONGER, JOHN W. GALLOWAY,
ROGER FARRAR, JAMES MCDONALD,
MARSHALL DURHAM, HENRY BUELL,
and BARBARA DYE,

       Plaintiffs,

                        CASE NO. 93-CV-40530-PVG-PJK
                        JUDGE PAUL V. GADOLA
                        MAGISTRATE JUDGE PAUL J. KOMIVES

v.

LUCAS VARITYKELSEY HAYES and
HAYES LEMMERZ INTERNATIONAL, INC.,

       Defendants.
_____/

**OPINION AND ORDER DENYING TRW'S MOTION FOR MAGISTRATE APPROVAL OF CHANGE IN ADMINISTRATOR UNDER SETTLEMENT AGREEMENTS (Doc. Ent. 420) and DEEMING MOOT MOTION TO ENFORCE SETTLEMENT AGREEMENT (Doc. Ent. 421)**

**I.    THE SETTLEMENT AGREEMENT**

This case was filed on November 12, 1993. *Golden, et al. v. Kelsey Hayes Co., et al.*, Case No. 93-CV-40530-PVG-PJK. On April 10, 2000, Lucas VarityKelsey Hayes (LVKH) and the Class Representatives entered into a settlement agreement. Doc. Ent. 421-3. The settlement agreement defines "administrator" as "the entity properly designated pursuant to Section 14 ["Administrator and Other Service Providers."] to provide administrative services for the medical plan under contract with LVKH[,]" Doc. Ent. 421-3 ¶ 1.1, and defines "current plans" as "the Detroit Health Care Benefit Plan, the Gunite Health Care Benefit Plan, the Heintz Health

Care Benefit Plan, the SPECO Health Care Benefit Plan, the Milford Health Care Benefit Plan and the Brighton Health Care Benefit Plan[,]" Doc. Ent. 421-3 ¶ 1.10. Each of these six (6) plans is defined as "the Health Care Benefits provided by LVKH to [the respective class members] as of December 31, 1993 and as being currently provided to [the respective class members]." Doc. Ent. 421-3 ¶¶ 1.3, 1.14, 1.20, 1.23, 1.33, 1.41. "Other Service Providers" are defined as "the administrators or providers of the prescription drug, dental, vision and hearing aid plans." Doc. Ent. 421-3 ¶ 1.35.

With respect to eligibility and participation, the settlement agreement provides that "[a]ll eligible Living Class Members shall be Participants in the applicable Current Plans." Doc. Ent. 421-3 ¶ 9.1. With respect to continuation of the current plans, it provides that "[f]rom the date of the Settlement Agreement forward, LVKH will continue to provide the Current Plans for Living Class Members for the Duration of Coverage set forth in Section 1.15." Doc. Ent. 421-3 ¶ 10.1.

The agreement also provides that "[a]ny controversy or dispute arising out of or relating to the following matters shall be resolved by the Magistrate:[1] . . . (c) disputes concerning changes in the Administrator or Other Providers under Section 14[.]" Doc. Ent. 421-3 ¶ 17.1(c). "In the event that the Retiree Committee and LVKH are unable to resolve a dispute for which a right to submit the matter to the Magistrate has been provided in this Settlement Agreement, that dispute will be presented to the Magistrate. The Magistrate will not have the authority to modify or amend this Settlement Agreement, but rather solely to apply the Settlement Agreement, as written, to particular factual situations. The Magistrate will consult with the parties and will make a final and binding decision after such formal or informal hearing as the Magistrate deems

---

[1]This opinion and order assumes the agreement is referring to a "United States magistrate judge[,]" as referred to in the Historical and Statutory Notes of 28 U.S.C. § 631 ("Change of Name") and Section 321 of Pub.L. 101-650.

appropriate." Doc. Ent. 421-3 ¶ 17.4.  A miscellaneous provision provides that "[t]his Settlement Agreement may be amended or modified only by a written instrument signed by the Class Representatives who are then living and LVKH.  Any such amendment that would materially affect the level of Plan benefits shall be effective only if approved by the Court."  Doc. Ent. 421-3 ¶ 22.2.

On August 2, 2000, a final judgment and order of dismissal was entered as to defendant Hayes Lemmerz International only.  Doc. Ent. 413.  The same day, a final judgment and order of dismissal was entered as to defendant Lucas VarityKelsey Hayes only.  Doc. Ent. 414.

## II.     TRW SEEKS TO INSTITUTE HUMANA AS THE ADMINISTRATOR OF MEDICAL CARE BENEFITS.

At the time the settlement agreement became effective, Unicare was the administrator of medical benefits.  Doc. Ent. 420 at 16.  *See also* Doc. Ent. 421-3 ¶ 14.2.  Effective January 1, 2005, "TRW changed the Administrator of medical benefits . . . from Unicare to Meritain (formerly North American Health Plan)[,]" for the Gunite, Heintz and SPECO medical plans.  Doc. Ent. 420 at 17; Doc. Ent. 421 at 13; Doc. Ent. 421-6.  Effective January 1, 2007, "Meritain replaced Blue Cross Blue Shield as the administrator of the medical plan for Detroit Class Members."  Doc. Ent. 421 at 13; Doc. Ent. 421-5.

On September 5, 2006, the Colby Retiree Committee met with Kiwicz, TRW's Vice President of Compensation and Benefits; Rastigue; Iocobelli; and Humana representatives.  Doc. Ent. 421 at 7; Doc. Ent. 421-9; Doc. Ent. 420-3.  As TRW explained in an October 18, 2006, letter to retiree committee members, TRW sought to change the medical benefits administrator to Humana, Inc.  According to TRW, "[t]his change in Administrators is being made in order to take advantage of an innovative approach to plan administration that simplifies the coordination

3

of medical benefits between Medicare and the applicable Health Care Benefits Plan." The letter explained that "[t]here will be no reductions in covered benefits or available level of service under the Health Care Benefits Plan[,]" "[n]o longer will it be necessary to have multiple filings and coordination of benefits between Medicare Parts a and B and the Health Care Benefits Plan[,]" and "ALL MEDICAL CLAIMS WILL GO DIRECTLY TO ONE ADMINISTRATOR, HUMANA, FOR PROCESSING." Doc. Ent. 421-8. *See also* Doc. Ent. 420-7.

On October 20, 2006, class counsel indicated to defense counsel that "we would consider permitting TRW to offer the Humana plan as an alternative plan as long as it was voluntary and as long as Class Members could easily return to the indemnity plan." Doc. Ent. 421-9. It was class counsel's position that "TRW intends to substitute a new plan of benefits - one that provides benefits now provided by Medicare as well as those provided by the Current Plan." Doc. Ent. 421-9. Class counsel's December 8, 2006, letter to defense counsel served as "the Retiree Committee's disapproval of that proposed action under Section 14.4 and a notice of dispute under Section 17.2." Also, class counsel wished to reserve the right to challenge the implementation of the Humana plan as violating the settlement agreement's terms. Doc. Ent. 421-10. *See also* Doc. Ent. 420-8.

On December 22, 2006, TRW wrote to retiree committee members, in part explaining that "class members remain in Medicare". As TRW stated, "Medicare Advantage plans cover all services covered by Medicare and members continue to have Medicare rights and protections." The letter further addressed the permanency of medicare advantage plans; provider acceptance of Humana; and enrollment requirements. Doc. Ent. 421-11. *See also* Doc. Ent. 420-9.

On January 25, 2007, class counsel wrote to TRW, "as notice under Section 17.3 of the

Settlement Agreement that the Retiree Committee hereby demands that the Humana PFFS dispute be submitted to the Magistrate." Doc. Ent. 421-12. *See also* Doc. Ent. 420-10.

### III. CONGRESSIONAL DISCUSSION OF MEDICARE ADVANTAGE PRIVATE FEE-FOR-SERVICE PLANS

The retiree committee has provided the Court with some documentation of discussion on Medicare Advantage PFFS plans. To begin, it supplies the March 2007 report, "An Examination of Medicare Private Fee-for-Service Plans," prepared by Avalere Health LLC for the Henry J. Kaiser Family Foundation. Doc. Ent. 421-19. The report examines PFFS Medicare plans; an overview of PFFS plans; market and enrollment trends; payment; and considerations for Medicare beneficiaries. Doc. Ent. 421-19. Also, the retiree committee offers the May 8, 2007, Kaiser Daily Health Policy Report titled, "Private Medicare Advantage Fee-for-Service Plans Under Scrutiny Because of Marketing Practices[.]" Doc. Ent. 421-23.

The retiree committee also brings to the Court's attention the May 22, 2007, statements of several individuals to the Ways & Means Subcommittee on Health, United States House of Representatives. Abby L. Block, Director of Center for Beneficiary Choices CMS, addressed enrollment in PFFS plans; additional benefits for PFFS enrollees; issues raised about PFFS plans and CMS oversight of PFFS plans. Doc. Ent. 421-13. David Lipschutz of California Health Advocates addressed factors contributing to marketing abuses; marketing misconduct; experiences of PFFS enrollees; and dual eligibles and PFFS plans. Doc. Ent. 421-14. Hospital Administrator Brock Slabach, on behalf of the National Rural Health Association, addressed "the potential downside of Medicare Advantage in rural communities[.]" Doc. Ent. 421-15. Mark E. Miller, Ph.D, Executive Director of the Medicare Payment Advisory Commission (MedPAC), addressed PFFS plans in Medicare Advantage (MA). Among the topics he addressed were the

enrollment growth, payment levels, and the efficiency of PFFS plans; MA benchmarks and plan payments; the effect of floor payment rates on MA benchmarks; MA benchmarks and plan payments: PFFS versus other plans; the history of PFFS plans and how they differ from other MA plans; and advantages enjoyed by PFFS plans compared to other plans. Doc. Ent. 421-16. Patricia Neuman, Sc.D, Vice President and Director of the Medicare Policy Project (The Henry J. Kaiser Family Foundation), discussed the focus on Medicare PFFS plans; the current Medicare PFFS landscape; characteristics of beneficiaries in PFFS plans; and key considerations for beneficiaries. Doc. Ent. 421-17. Sean Dilweg, State of Wisconsin Commissioner of Insurance, discussed marketing complaints; limited state regulatory authority; and financial incentives. Doc. Ent. 421-18.

Additionally, the retiree committee refers to the June 15, 2007, CMS press release "Plans Suspend PFFS Marketing", stating that "in response to concerns about marketing practices, seven health care sponsors have signed an agreement to suspend voluntarily the marketing of [PFFS] plans." Doc. Ent. 421-22. It also refers to the June 18, 2007, press release of representative Pete Stark, Chairman of the Ways and Means Health Subcommittee, which responded to CMS's announcement that "seven private health insurance companies had agreed to a voluntary and temporary suspension of [PFFS] marketing." Doc. Ent. 421-24.[2]

---

[2]The retiree committee also provides the November 15, 2006, article, "Side effects to Medicare Advantage; Some seniors enroll in plan, only to find out later it's not accepted by their doctor[,]" from *The Charlotte Observer*; the April 29, 2007, article, "Universal In Limbo Over PFFS Plan[,]" from *The Tampa Tribune*; the May 8, 2007, article, "Politics & Economics: Medicare's Growing Pains - - - Alternative Plan's Sales Tactics, Subsidies Draw Ire[,]" from *The Wall Street Journal*; and the June 27, 2007, article, "Many Advantage Providers Violated Rules, Medicare Says[,]" from *The Tampa Tribune*. Doc. Ent. 421-20. Doc. Ent. 421-20.
    Additionally, it provides the May 28, 2007, *Modern Healthcare* article, "Docs vs. insurers", which discusses how the American Medical Association "spars with AHIP [America's

## IV. PENDING MOTIONS BASED UPON THE SETTLEMENT AGREEMENT

On April 5, 2007, LVKH and Hayes Lemmerz filed a motion to enforce settlement agreements by referral to magistrate. Doc. Ent. 417. Judge Gadola referred the matter to me for hearing and determination (Doc. Ent. 418), and on May 17, 2007, I entered an order granting the motion and setting deadlines (Doc. Ent. 419).

Currently before the Court is TRW's June 29, 2007, motion for magistrate approval of change in administrator under settlement agreements. Doc. Ent. 420. By its motion, TRW seeks "to change the medical benefits administrator for Medicare-eligible Class Members from Meritain Health Inc. ('Meritain') to Humana Inc. ('Humana')." Doc. Ent. 420 at 11.

Also before the Court is the retiree committee's June 29, 2007, motion to enforce settlement agreement. Doc. Ent. 421. The retiree committee requests that the Court "reject TRW's request to make the Humana Advantage PFFS Plan mandatory for all Class Members." Alternatively, the retiree committee "requests that this Court permit limited discovery and schedule an evidentiary hearing so that [it may] present evidence on the nature of the Humana Advantage PFFS Plan." Doc. Ent. 421 at 18.

On July 16, 2007, Judge Gadola referred these two motions to me for hearing and determination. Doc. Ent. 423. On August 1, 2007, I entered a stipulation and order extending the deadline for response briefs to August 6, 2007. Doc. Ent. 424.

On August 4, 2007, the retiree committees filed a response to TRW's motion to impose the Humana Advantage PFFS Plan on class members. Doc. Ent. 425. On August 6, 2007, TRW filed a response to the retiree committee's motion to enforce settlement agreement. Doc. Ent.

---

Health Insurance Plans] over Medicare Advantage". Doc. Ent. 421-21.

426.

On August 17, 2007, TRW filed a reply brief in support of its motion for magistrate approval of change in administrator under settlement agreements. Doc. Ent. 427. On August 31, 2007, the retiree committee filed a reply in support of its motion, renewing the arguments set forth in the August 4, 2007, response. Doc. Ent. 428.

**V.     IS TRW'S PROPOSED CHANGE IN THE THIRD-PARTY PAYOR OF MEDICAL CLAIMS FROM MERITAIN HEALTH TO HUMANA INC. A CHANGE IN "ADMINISTRATOR" UNDER SECTION 14?**

**A.**     Section 14 of the April 10, 2000, settlement agreement, which concerns "Administrator and Other Service Providers[,]" provides in part:

> If LVKH desires to change any Administrator or any Other Service Provider, or offer Medicare Risk HMO plans, other HMO plans or other Medicare alternative plans pursuant to Section 13, it will send each of the members of the Retiree Committee a notice of the proposed action and a brief explanation of the reasons for the proposed action. Upon request, LVKH will promptly provide the Retiree Committee with any information reasonably necessary to evaluate the proposed action, including the qualifications of the proposed administrator or provider. By no later than 60 calendar days after notice by LVKH of a proposed action, the Retiree Committee will approve or disapprove such a proposed action. If there is a dispute between LVKH and the Retiree Committee regarding a proposed change in any administrator or provider or in the offering of alternative plans under Section 14, it shall be resolved in accordance with the provisions of Section 17 ["Dispute Resolution by The Magistrate."]. The Retiree Committee will not disapprove of any proposed change in Administrator or Other service Provider without *good reason* related to the *level* or *efficient administration of benefits*. If the Retiree Committee disapproves of a proposed change, it must state its reasons for disapproval with specificity within the 60 day calendar time period.

Doc. Ent. 421-3 ¶ 14.4 (emphasis added).

**B.**     According to "Medicare & You 2007," "[m]ost people get their Medicare health care coverage in one of two ways[:]" (1) original Medicare plan or (2) Medicare Advantage Plans like HMOs and PPOs. Doc. Ent. 420-16 at 4. "Medicare Advantage Plans are health plan options

8

that are approved by Medicare and run by private companies. ***They are part of the Medicare Program, and sometimes called 'Part C.' When you join a Medicare Advantage Plan, you are still in Medicare***." Doc. Ent. 420-16 at 5 (emphasis added). They "provide all of your Part A (hospital) and Part B (medical) coverage and must cover medically-necessary services." "Medicare pays an amount of money for your care every month to these private health plans, whether or not you use services."

Among the Medicare Advantage Plans are Medicare Private Fee-for-Service (PFFS) Plans. Doc. Ent. 420-16 at 5. In most cases, health care can be received from any doctor or hospital. The patient "can go to any Medicare-approved doctor or hospital that accepts the plan's payment terms for covered services." Specifically, the brochure provides:

> PFFS plans are different from the Original Medicare Plan. PFFS plans are offered by private companies. The private company, rather than Medicare, decides how much it will pay and what you pay for the services you get. Extra benefits are often offered for an extra premium.

Doc. Ent. 420-16. Also, the Medicare Private Fee-for-Service Plan Marketing Rules dated August 28, 2007, acknowledge that "***Medicare PFFS Plans are not the same and the Original Medicare Plan or Medigap (Medicare Supplement Insurance) policies.***" Doc. Ent. 428-2 at 3 (emphasis added).

**C.** TRW admits that it "may not reduce or eliminate the level of health care benefits agreed to by the parties in the Agreements and has not attempted to do so[;]" however, it contends that "the Agreements do not mandate how TRW is to administer the health care benefits promised to Class Members, other than that they must be "administered in a fair, professional and efficient manner in recognition of the legitimate interests of [TRW] and the Class Members." Doc. Ent. 420 at 15. *See also* Doc. Ent. 221-3 ¶ 14.1.

9

As previously noted, TRW seeks "to change the medical benefits Administrator for the Medicare-eligible Class Members . . . (other than the "Detroit" group)[3] . . . from Meritain to Humana." Doc. Ent. 420 at 18. With respect to the Humana Medicare Advantage Program Designed for the Class Members, TRW states that "[t]he Medicare Advantage arrangement proposed for the Class Members is Humana's Group Medicare Private Fee-For-Service ("PFFS") program." Doc. Ent. 420 at 21. TRW represents that "Humana would serve as a single point of contact and process all medical claims on behalf of both Medicare and TRW[,]" and "[t]here would be no reductions in covered benefits or available level of service for the Class Members under the PFFS program." Doc. Ent. 420 at 21-22. Additionally, TRW represents that "Humana's PFFS Program is not a network-based system[,]" noting that "Class Members would be able to use any provider they wished under the Humana PFFS program[,]" and "if a particular provider chooses not to accept payment from Humana or Medicare, the Class Member would pay the claim directly and be reimbursed by Humana." Doc. Ent. 420 at 23-24.

TRW argues that "[t]he change to Humana would be a change in administrator under the settlement agreements." Doc. Ent. 420 at 27-31. TRW argues that its proposal is not a change in health care plans, because "health care plans" "are defined solely with reference to the types of 'Health Care Benefits' covered[,]" and "none of these benefits would be modified (other than some enhancements)[.]" Doc. Ent. 420 at 27. In support of this argument, it contends that (1) "Unicare and Meritain have provided, and Humana will provide, third party administrative services common to ERISA plans[;]" (2) "[c]ompanies operating Medicare Advantage Programs

---

[3]The Humana PFFS plan "will not cover Detroit Class Members." Doc. Ent. 421 at 7.

10

provide administrative services for CMS [Centers for Medicare & Medicaid Services[4]], for federally-mandated benefits[;]" and (3) "[a]s the unified claims payor, contracting with TRW, Humana takes the place of Meritain and CMS, and fits the definition of administrator under each of the settlement agreements."  Doc. Ent. 420 at 28-31.

In support of the second argument, TRW cites *First Medical Health Plan, Inc. v. Vega-Ramos*, 479 F.3d 46, 52 (1st Cir. 2007) ("The legislative history of [42 U.S.C. § 1395w-26(b)(3)] clarified that 'the [Medicare Advantage Program] is a federal program operated under Federal rules and that State laws, do not, and should not apply, with the exception of state licensing laws or state laws related to plan solvency.'") (quoting H. Conf. Rep. 108-391 at 557, reprinted in 2003 U.S.C.C.A.N. at 1926) and *PacifiCare of Arizona, Inc. v. Surgical Assistant Associates, L.L.C.*, No. CV06-00132-PHX-NVW, 2007 WL 708833, *1 (D. Ariz. Mar. 2, 2007) ("Part C providers are obligated to comply with Medicare's regulatory scheme in administering the federal benefits.").  Doc. Ent. 420 at 29.

Attached to the motion is the June 28, 2007, affidavit of Edward Sandrick, Humana's Director of Group Medicare.  Sandrick alleges that "Humana undergoes a rigorous and ongoing certification process with CMS" "[t]o ensure ongoing compliance with CMS requirements in offering Medicare Advantage[.]" Doc. Ent. 420-14.

**D.**     The retiree committee's own motion makes three arguments which are relevant here. Doc. Ent. 421 at 15-17.  First, the retiree committee argues that "Class Members will be subject to denial of treatment and liability for the full cost of care[.]" Doc. Ent. 421 at 15-16.  In support of this argument, the retiree committee contends that "[p]hysicians are not required to accept

---

[4]*See* www.cms.hhs.gov.

11

payments from Medicare Advantage PFFS plans and can refuse to treat patients covered by such plans." Doc. Ent. 421 at 15 (citing Block (Doc. Ent. 421-13)).[5]

Second, the retiree committee argues that "TRW cannot be permitted to shift its obligation under the settlement agreement to taxpayers and Medicare recipients[.]" Doc. Ent. 421 at 16-17. Third, the retiree committee argues that "[t]he uncertainty as to the viability of Medicare Advantage PFFS Plans creates unjustifiable risks for Class Members[.]" Doc. Ent. 421 at 17.

**E.** In response to the retiree committee's motion, TRW contends that (A) "TRW's designation of Humana as the unified claims payor will be a change in administrator under the agreements[,]" (B) "[t]he change offers the same or better benefits and a fair, professional, and efficient administration, recognizing the legitimate interests of both TRW and the class members[,]" and (C) "TRW will submit to monitoring of its change in administrators." Doc. Ent. 426.

**F.** This order assumes that the parties dispute not the interpretive question of what "plan" means, but, rather, the factual question of whether the proposed change would constitute a change in benefits or level of service. With this in mind, I look to the "TRW Retiree Group Plans" chart, which compares benefits under the "Humana Proposal Custom Plan 78" with benefits under some of the current plans. Many of the proposed plan's benefits are the same.

---

[5]Citing the May 22, 2007, statement of Abby L. Block on Medicare Advantage Private Fee-For-Service Plans before the Ways & Means Subcommittee on Health (Doc. Ent. 421-13) and the aforementioned report "An Examination of Medicare Private Fee-for-Service Plans" (Doc. Ent. 421-19), the retiree committee argues that "[w]hile a provider who treats a PFFS plan participant is deemed to have accepted the PFFS payment, the provider can refuse to provide services to an enrollee at each visit." Doc. Ent. 421 at 9.

Some are more favorable - for example, a routine exam is covered at 100% but is not covered under some of the current plans. However, there is at least one disadvantage - dialysis is covered at 100% with limitations, while it is sometimes covered under the current plans at the same percentage without limitation. Doc. Ent. 420-13 at 2.

Perhaps there are other differences. Suffice it to say that, in the absence of an argument by TRW that the settlement agreement permits this change notwithstanding a difference in coverage, I can only conclude that this is a change in benefits or level of service.

**VI. IF IT IS A CHANGE IN ADMINISTRATOR (IN OTHER WORDS, IF IT IS NOT A CHANGE IN PLAN), DOES SECTION 13 OF THE SETTLEMENT AGREEMENT PROHIBIT THE PROPOSED CHANGE?**

**A.** Section 13 of the settlement agreement, which concerns "HMO and Medicare Risk HMO Optional Coverage[,]" provides in part, "LVKH may offer Medicare Risk HMO plans, other HMO plans or *other Medicare alternative plans as options to the Current Plans* provided to Class Members under this Settlement Agreement where available, as long as such plans have benefits that are no lower than those provided by the Current Plans." Doc. Ent. 421-3 ¶ 13.1 (emphasis added).[6] Section 13 also provides that "[p]articipants in the HMO and HMO Medicare Risk optional coverage can opt out of that coverage and back into the applicable Plan upon 30 days notice." Doc. Ent. 421-3 ¶ 13.3.

---

[6]The retiree committee argues that "Kelsey-Hayes had long offered 'group practice plans' such as HAP to employees and retirees under collective bargaining agreements." Doc. Ent. 421 at 6 n.5. The February 1, 1980, supplemental agreement states in part "[t]he Company has made arrangements to provide annually an option for each employe[e] to subscribe for Hospital, Medical and Prescription Drug Expense coverages under either the Health Alliance Plan (HAP) or the Blue Cross-Blue Shield plans. Such arrangements will be continued, subject to the continued availability and enrollment requirements of the (HAP)." Doc. Ent. 421-4 (Insurance Program - Supplement "H" to 1980 CBA between Kelsey-Hayes and UAW (Excerpt)).

**B.**     The retiree committee argues that "[t]he settlement agreement prohibits mandatory participation in Medicare Alternative Plans such as Humana PFFS[.]" Doc. Ent. 421 at 11-15.

**C.**     The retiree committee's response to TRW's motion to impose the Humana Advantage PFFS plan on class members and its reply in support of its motion to enforce settlement agreement present the argument that "[f]orced enrollment in the Humana PFFS Plan would violate the settlement agreements[.]" Doc. Ent. 425 at 5-10, Doc. Ent. 428 at 2-3. In conclusion, it states that "[t]he parties to these Settlement Agreements carefully negotiated the terms under which TRW could offer Medicare alternate plans to Class Members as an option to the contractual benefit Plans." Doc. Ent. 425 at 10.

**D.**     In a reply in support of TRW's motion, it argues that "[t]he committees ignore the issue of the administrator as defined by the agreements, wrongly contending the change is equal to an HMO under the agreements." Doc. Ent. 427 at 5. TRW states that "the Committees ignore th[e] fact that a PFFS plan is exactly what they have presently, and that this PFFS form of coverage and payment will continue. The Committees also ignore the fact that TRW is not changing the 'plan' it committed to provide in the Settlement Agreements." Doc. Ent. 427 at 5.

**E.**     Resolution of this issue turns upon the parties' definition of "other Medicare alternative plans[.]" Doc. Ent. 421-3 ¶ 13.1. I read this phrase as meaning more than covering just HMOs, because it already says "other HMO plans", which presumably covers the universe of HMO plans.[7] At first blush, giving the term "alternative" its natural meaning, the Humana PFFS plan appears to be a "Medicare alternative plan." Defendants do not offer any alternative definition

---

[7]My conclusion is unchanged by the fact that the remaining paragraphs in Section 13 refer to "HMO" and/or "HMO Medicare Risk optional coverage". Doc. Ent. 421-3 ¶¶ 13.2, 13.3, 13.4.

14

of the Humana PFFS plan, other than it is not an HMO.

Nonetheless, in light of my conclusion that the proposed change is a change in benefits or level of service, the retiree committee's motion is rendered moot and I need not decide whether the phrase "other Medicare alternative plans" includes the Humana PFFS plan at issue in this case.

## VII. WOULD FORCED ENROLLMENT IN THE HUMANA PFFS PLAN VIOLATE 42 U.S.C. § 1395w-21?

**A.** The retiree committee's response to TRW's motion to impose the Humana Advantage PFFS plan on class members and its reply in support of its motion to enforce settlement agreement present the argument that "[f]orced enrollment in the Humana PFFS Plan would violate federal law[.]" Doc. Ent. 425 at 10-13, Doc. Ent. 428 at 4-5. The retiree committee contends that "[e]ach and every Medicare eligible retiree has the absolute, federally guaranteed right to remain in the original Medicare. And, TRW has the absolute, contractual obligation to provide benefits supplemental to the Original Medicare for those individuals who exercise that right." Doc. Ent. 425 at 12.

TRW argues that "[t]he change to Humana as the administrator will be done lawfully and under CMS procedures specifically authorized for employer-sponsored group plans." Doc. Ent. 427 at 5-8. In support of this argument, TRW states that (1) "[t]he statute allows CMS to establish processes for elections, and permits 'deemed' elections, election by default, and passive elections[,]" and (2) "[e]mployers may enroll retirees that are in a group plan into Medicare Advantage without the retirees affirmatively opting-in." Doc. Ent. 427 at 5-6, 6-8.

The retiree committees explain that they "are not referring to convenience[.]" Rather, they "are talking about their contractual and statutory rights to stay in (the Original) Medicare

15

and not be required to transfer (against their will) into a Medicare alternative plan which, as CMS states, is 'not the same . . . .'[.]" Doc. Ent. 428 at 4.

**B.** 42 U.S.C. § 1395w-21 concerns eligibility, election and enrollment with regard to Medicare+Choice plans.[8] "[E]ach Medicare+Choice eligible individual (as defined in paragraph (3)) *is entitled to elect to receive benefits* (other than qualified prescription drug benefits) under this title--

> (A) through the original medicare fee-for-service program under parts A and B of this subchapter, or
>
> (B) through enrollment in a Medicare+Choice plan under this part,

and may elect qualified prescription drug coverage in accordance with section 1395w-101 of this section." 42 U.S.C. § 1395w-21(a)(1) (emphasis added).

The process for exercising choice in a Medicare+Choice Program "shall permit an individual who wishes to elect a Medicare+Choice plan offered by a Medicare+Choice organization to make such election through the filing of an appropriate election form with the organization." 42 U.S.C. § 1395w-21(c)(2)(A).

"The term 'Medicare+Choice private fee-for-service plan' means a Medicare+Choice plan that–

> (A) reimburses hospitals, physicians, and other providers at a rate determined by the plan on a fee-for-service basis without placing the provider at financial risk;
>
> (B) does not vary such rates for such a provider based on utilization relating to such provider; and

---

[8]According to the retiree committee, "[i]n 2003, Congress substituted the terms 'Medicare Advantage' or 'MA' for 'Medicare+Choice.' The terms are interchangeable." Doc. Ent. 425 at 10 n.10.

16

> (C) does not restrict the selection of providers among those who are lawfully authorized to provide the covered services and agree to accept the terms and conditions of payment established by the plan.

42 U.S.C. § 1395w-28(b)(2).

**C.** The retiree committee argues that 42 U.S.C. § 1395w-21(c)(2)(A) "alone is sufficient to dispel any illusion TRW (and Humana) have tried to instill in the Retiree Committees and this Court that TRW and Humana singly or together have the right to 'enroll' Class Members in the Humana PFFS plan by fiat. Such an action would violate the Social Security Act which ensures that individuals, not employers or Medicare Advantage organizations, determine whether they want to receive their benefits from the 'original medicare' or from a Medicare Advantage plan provider." Doc. Ent. 425 at 10-11.

I note that the September 5, 2006, Humana Medicare Advantage presentation states, with respect to the enrollment process, that "[r]etirees and dependents are required to complete an Enrollment Application." Doc. Ent. 421-7. I also note that The Marketing Rules provide that Medicare PFFS Plans MUST: . . . "[c]all you after you enroll to make sure that you wanted to join and that you understand how the plan works[.]" Doc. Ent. 428-2 at 3.

I further note that the Medicare Managed Care Manual, Chapter 2 - Medicare Advantage Enrollment and Disenrollment, has been filed with the Court. Doc. Ent. 425-2. *See also* 427-3. It contains provisions on alternate employer group election mechanism (20.4.1); passive elections (20.4.2); group enrollment for employer or union sponsored plans (20.4.8) and group enrollment for employer or union sponsored plans (40.1.8). Doc. Ent. 427-3 at 2, 4. A summary of the September 8, 2006, updates notes an "[a]dded group enrollment process for employer/union sponsored plans as announced in 10/5/06 memo[.]" Doc. Ent. 427-4 at 4

17

(40.1.8). The April 13, 2007 summary of updates states in part that "MAOs are responsible for ensuring that group enrollment process meets MA enrollment requirements and that arrangements with employers/unions make such requirements clear[.]" Doc. Ent. 427-6 at 4-5 (40.1.8). The June 20, 2007, update notes group enrollment for employer or union sponsored plans (20.4.3) and group enrollment for employer/union sponsored plans (40.1.7). Doc. Ent. 427-5.

However, in light of my previous conclusions that the proposed change is a difference in benefits or level of service, I need not reach a conclusion on the retiree committee's argument that forced enrollment in the proposed plan would violate 42 U.S.C. § 1395w-21.

**VIII. IS THE RETIREE COMMITTEE UNJUSTIFIED IN DISAPPROVING OF TRW'S PROPOSED CHANGE IN ADMINISTRATOR WHEN THE CHANGE WILL PROVIDE THE SAME OR BETTER LEVEL OF BENEFITS, AND WILL PROVIDE A FAIR, PROFESSIONAL, AND EFFICIENT ADMINISTRATION, RECOGNIZING THE LEGITIMATE INTERESTS OF BOTH TRW AND THE CLASS MEMBERS?**

According to TRW, "[t]he settlement agreements contemplate retiree disapproval only for good reason associated with the level or administration of benefits." Doc. Ent. 420 at 26. TRW argues that "[t]he retiree committees do not have good reason to disapprove of this change in administrator." In support of this argument, TRW contends that (1) "[t]he change would not reduce the level of benefits[;]" (2) "[t]he change would not jeopardize the fair, professional, and efficient administration of benefits[;]" and (3) "[t]he change in administrator recognizes the legitimate interests of both TRW and the Class Members." Doc. Ent. 420 at 31-35.

The retiree committee contends that "[e]ven if TRW's intended action did not violate the Social Security Act and the Settlement Agreements, Class Members covered by the Settlement Agreements here should not be made involuntary pawns in this continuing, volatile debate."

18

Doc. Ent. 425 at 13.

As was the case in the previous section, in light of my previous conclusions that the proposed change is a difference in benefits or level of service, I need not reach a conclusion on TRW's argument that "[t]he retiree committees do not have good reason to disapprove of this change in administrator." Doc. Ent. 420 at 31-35.

## IX. ORDER

In accordance with the foregoing, the TRW's June 29, 2007, motion for magistrate approval of change in administrator under settlement agreements (Doc. Ent. 420) is DENIED. The June 29, 2007, motion to enforce settlement agreement (Doc. Ent. 421) is DEEMED MOOT.

IT IS SO ORDERED.

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of ten (10) days from the date of service of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. 636(b)(1).


Dated: 3/31/08

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

---

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on March 31, 2008.

s/Eddrey Butts
Case Manager