UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY FOX, et al.,
        Plaintiffs,

v.

                              CASE NO. 93-CV-74615-DT
                              JUDGE JULIAN ABELE COOK
                              MAGISTRATE JUDGE PAUL J. KOMIVES

MASSEY-FERGUSON, a division of
VARITY CORPORATION, a Delaware
corporation,
        Defendant.
_____

JOSEPH GOLDEN, et al.,
        Plaintiffs,

v.

                              CASE NO. 93-CV-40530-FL
                              JUDGE PAUL V. GADOLA
                              MAGISTRATE JUDGE PAUL J. KOMIVES

LUCAS VARITY KELSEY HAYES,
a Delaware corporation and HAYES
LEMMERZ INTERNATIONAL, INC.,
a Delaware corporation,
        Defendants.
_____

ROBERT J. COLBY, et al.,
        Plaintiffs,

v.

                              CASE NO. 94-CV-71698-DT
                              JUDGE JULIAN ABELE COOK
                              MAGISTRATE JUDGE PAUL J. KOMIVES

MASSEY-FERGUSON, a division of
VARITY CORPORATION, a Delaware
corporation,
        Defendant.
_____

OPINION AND ORDER (1) GRANTING DEFENDANTS' MOTIONS FOR CHANGE IN
ADMINISTRATOR (Doc. Entries 301 / 420 / 224) and (2) DENYING IN PART PLAINTIFFS'
MOTIONS TO ENFORCE SETTLEMENT AGREEMENT (Doc. Entries 302 / 421 / 225)[1]

---

[1] This order is being entered in each of the three above-captioned cases. Docket references appear in the order in which the cases were filed.

**I.      OPINION**

**A.      *Background***

A full background of these cases is provided in the Court's separate orders filed on March 31, 2008. Doc. Ent. 309 at 1-4; Doc. Ent. 429 at 1-3; Doc. Ent. 233 at 1-3. Briefly restated here, these three class actions resulted in settlement agreements between the plaintiff classes and defendants, collectively referred to as TRW. The agreements require TRW to continue in effect certain health care plans for retirees forming the three classes. The agreements provide that TRW may, upon notice to and consent of the Retiree Committee for each class, change the plan Administrator. If the Retiree Committee objects, the dispute shall be resolved by the Magistrate Judge.

In late 2006, TRW sought to change the Administrator to Humana under a Medicare Advantage (MA) Private Fee-for-Service (PFFS) Plan. The Retiree Committee for each class objected. *See* Doc. Ent. 309 at 4-5; Doc. 429 at 3-5; Doc. Ent. 233 at 3-5. In each case, TRW filed a motion for change in administrator, and the Retiree Committees filed cross-motions to enforce the settlement agreement. Doc. Entries 301 & 302 / 420 & 421 / 224 & 225. The parties filed responses and replies with respect to each motion.

On March 31, 2008, the Court entered an Order in each case denying TRW's motion for change in administrator and denying as moot the Retiree Committees' motion to enforce the settlement agreement. Doc. Entries 309 / 429 / 233. Specifically the Court concluded, based on a chart attached to TRW's motion, that the change in Administrator would result in a reduction of benefits, and thus constituted a prohibited change in the plan, rather than simply a change in Administrator. Doc. Ent. 309 at 9-14; Doc. Ent. 429 at 8-13; Doc. Ent. 233 at 8-13.

On April 4, 2008, TRW filed motions for reconsideration, arguing that the Court made a palpable defect because the issue of whether the change in administrator would alter the benefits under the plans was not raised by the plaintiffs and because it is clear that there would be no reduction in benefits as a result of the change in Administrator. Doc. Entries 310 / 430 / 234. On December 1, 2008 the Court conducted a hearing on the matter, at which the Court granted in part TRW's motions for reconsideration, concluding that the Court had erred in finding that the change in Administrator would be a change in the level of benefits under the Plans. *See* Doc. Entries 322 / 435 / 239. Accordingly, the matter is again before the Court on the parties' motions, for consideration of the issues not addressed in the Court's prior orders denying TRW's motions for change in administrator.

**B.**  *Analysis*

The parties' motions present a number of issues relating to TRW's proposed change of Administrator to the Humana PFFS Plan. Principally, the question before the Court is whether the Retiree Committees were justified in rejecting TRW's proposed change of administrator. In the July 2, 2007 motions to enforce settlement agreement, plaintiffs present four reasons why their rejection was justified: (1) the settlement agreements prohibit mandatory participation in MA plans such as Humana PFFS; (2) if the change is allowed, class members will be denied treatment and be subject to liability for the full cost of care; (3) TRW should not be permitted to shift its obligations under the settlement agreements to taxpayers and Medicare recipients; and (4) the uncertainty as to the viability of MA PFFS plans creates unjustifiable risk for class members. Doc. Entries 302 / 421 / 225. Furthermore, in response to the motions for magistrate approval of change in administrator and in reply to the responses to their own motions, plaintiffs contend that forced enrollment in the

3

Humana PFFS plan would violate 42 U.S.C. § 1395w-21.  Doc. Entries 305 & 308 / 425 & 428 / 229 & 232.  For the reasons that follow, the Court concludes that the proposed change in Administrator should be allowed.

     **1.**     *Whether the Settlement Agreements Prohibit the Change*

Plaintiffs' principal argument is that the settlement agreements prohibit the change in Administrator to the Humana PFFS plan.  Doc. Ent. 302 at 11-17; Doc. Ent. 421 at 11-15; Doc. Ent. 225 at 12-18.

          *a. Colby and Fox*

Both the *Colby* and *Fox* settlement agreements provide that, in certain circumstances, TRW will offer "Medicare Risk or other HMO alternatives" to class members.  *See Colby* Settlement §§ 13.1-13.9 (Doc. Ent. 225-3 at 20-22); *Fox* Settlement §§ 14.1-14.9 (Doc. Ent. 302-3 at 28-29).  Specifically, this portion of the settlements provides that "[p]articipants in the HMO and HMO Medicare Risk optional coverage can opt out of that coverage and back into the applicable Plan upon 30 days notice . . . ."  *Colby* Settlement § 13.8; *Fox* Settlement § 14.8.  Plaintiffs contend that these provisions prohibit the change to the Humana PFFS plan *in toto*, and alternatively that any change to the Humana PFFS plan that is permitted must be optional.

Nothing in the settlement agreements prohibits the change of Administrator to the Humana PFFS plan.  A PFFS plan does not constitute a change in the plan, as defined by the level of benefits provided, nor does it alter a participant's Medicare coverage.  Doc. Ent. 301-16 / Doc. Ent. 420-16 / Doc. Ent. 224-16 ("Medicare & You 2007").[2]  A participant in a PFFS plan is simply shifted to

---

    [2]"Medicare Advantage Plans are health plan options that are approved by Medicare and run by private companies.  They are part of the Medicare Program, and sometimes called 'Part C.'  When you join a Medicare Advantage Plan, you are still in Medicare."  Doc. Ent. 301-16 at 5 / Doc.

4

Medicare Part C, which combines both Medicare Parts A and B.[3]  A participant continues to pay Medicare premiums as under Part B.  *See* Centers for Medicare & Medicaid Services, "Your Guide to Medicare Private Fee-for-Service Plans," pp. 3-4.[4]  The only difference, from the participant's standpoint, is the entity responsible for administrative claims processing.

The *Colby* and *Fox* settlement agreements clearly contemplate the circumstances under which different types of plans–HMOs–may be offered.  Both agreements speak of "Medicare Risk or other HMO alternatives."  *Colby* Settlement § 13.1; *Fox* Settlement § 14.1.  The use of "other HMO alternatives" suggests that HMOs are what those sections are concerned with, and not any change in the way that Medicare claims are processed.  This conclusion is buttressed by the titles of those sections of the settlement agreements–"HMO and Medicare Risk HMO Optional Coverage"–and by the fact that the remainder of those sections address only HMOs.

There is no question that the Humana PFFS plan is not an HMO, and does not function in any way similar to an HMO.  According to the June 28, 2007 affidavit of Edward Sandrick,[5] "the PFFS program would not employ 'provider networks[,]'" and "the TRW participants would be free

---

Ent. 420-16 at 5 / Doc. Ent. 224-16 at 5 ("Medicare & You 2007").  "Medicare Advantage Plans provide all of your Part A (hospital) and Part B (medical) coverage and must cover medically-necessary services."  *Id*.

[3]As described in the "Medicare Basics" chart, Medicare Advantage plans like HMOs and PPOs, called "Part C", combine Part A (Hospital) and Part B (Medical).  "Private insurance companies approved by Medicare provide this coverage.  Generally, you must see doctors in the plan.  Your costs may be lower than in the Original Medicare Plan, and you may get extra benefits."  Doc. Ent. 301-16 at 4 / Doc. Ent. 420-16 at 4 / Doc. Ent. 224-16 at 4.

[4]The booklet also says it is possible that the participant will "have to pay an additional monthly premium to be in the plan[.]" *Id.*

[5]Sandrick is "a Director, Group Medicare, for Humana, Inc. ("Humana")[.]" Doc. Entries 301-14 ¶ 1 / 420-14 ¶ 1 / 224-14 ¶ 1.

to see any provider, although they may incur higher out-of-pocket expenses if the provider they receive services from does not accept Medicare, which does occur on rare occasions." Doc. Entries 301-14 ¶ 8 / 420-14 ¶ 8 / 224-14 ¶ 8. Thus, the Humana PFFS plan does not come under the sections of the settlement agreements dealing with "HMO and Medicare Risk HMO Optional Coverage," and nothing else in the settlement agreement prohibits the proposed change to the Humana PFFS plan.[6]

Accordingly, the proposed change in Administrator is not barred by either the *Colby* or *Fox* Settlement Agreements.[7]

### b. *Golden*

The *Golden* settlement agreement, which was entered into later than the other two agreements, clearly permits TRW to offer the Humana PFFS plans. Doc. Ent. 421-3 at 25-26 §§ 13.1-13.4 ("HMO and Medicare Risk HMO Optional Coverage"). The *Golden* agreement provides, in relevant part, that TRW "may offer Medicare Risk HMO plans, other HMO plans or other Medicare alternative plans as options to the Current Plans provided Class Members under this Settlement Agreement where available, as long as such plans have benefits that are no lower than

---

[6]The "Medicare & You 2007" brochure contains a chart which compares three types of Medicare Advantage Plans: PPOs, HMOs and PFFSs. According to the chart, you do not need to choose a primary care doctor, and you do not have to see a primary care doctor to get a referral to a specialist. As to whether a participant can get health care from any doctor or hospital, for a PFFS this occurs "[i]n most cases." A participant "can go to any Medicare-approved doctor or hospital that accepts the plan's payment terms for covered services." Doc. Ent. 301-16 at 6-7 / Doc. Ent. 420-16 at 6-7 / Doc. Ent. 224-16 at 6-7.

[7]To the extent plaintiffs contend that participation in the Humana PFFS plan must be optional based on the provisions of the HMO and Medicare Risk HMO provisions of the settlement agreements (Doc. Ent. 302 at 11-17; Doc. Ent. 421 at 11-15; Doc. Ent. 225 at 12-18), as noted above these provisions do not apply to the Humana PFFS plan. As discussed in the following section, however, the procedures governing group enrollment under federal law do require that plan participants be given the choice of opting out of the PFFS plan.

those provided by the Current Plans." *Golden* Settlement § 13.1. It further provides that "[p]articipants in the HMO and HMO Medicare Risk optional coverage can opt out of that coverage and back into the applicable Plan upon 30 days notice." Golden Settlement § 13.3.

There is no question that the Humana PFFS plan is a "Medicare alternative plan" permitted by § 13.1. The only limitation on TRW's ability to offer the plan to the *Golden* class members is that enrollment in the plan must be optional, a conclusion required as well by federal law, as explained in the following section.

### 2.     *Whether 42 U.S.C. § 1395w-21 Prohibits the Change*

Plaintiffs argue that forced enrollment of the class members in the Humana PFFS plan would violate 42 U.S.C. § 1395w-21,[8] which in part provides: "Subject to the provisions of this section, each Medicare+Choice eligible individual . . . is entitled to elect to receive benefits . . . under this title–(A) through the original medicare fee-for-service program under parts A and B of this subchapter, or (B) through enrollment in a Medicare+Choice plan under this part." 42 U.S.C. § 1395w-21(a)(1). The statute further provides the procedure for an enrollee to exercise his choice under (a)(1). Specifically, the statute provides:

**(1) In general**
    The Secretary shall establish a process through which elections described in subsection (a) of this section are made and changed, including the form and manner in which such elections are made and changed. Such elections shall be made or changed only during coverage election periods specified under subsection (e) of this section and shall become effective as provided in subsection (f) of this section.
**(2) Coordination through Medicare+Choice organizations**
**(A) Enrollment**
    Such process shall permit an individual who wishes to elect a Medicare+Choice plan offered by a Medicare+Choice organization to make such

---

[8]Doc. Entries 305 at 10-13 & 308 at 4-5 / 425 at 10-13 & 428 at 4-5 / 229 at 10-13 & 232 at 4-5.

election through the filing of an appropriate election form with the organization.
**(B) Disenrollment**
Such process shall permit an individual, who has elected a Medicare+Choice plan offered by a Medicare+Choice organization and who wishes to terminate such election, to terminate such election through the filing of an appropriate election form with the organization.

42 U.S.C. § 1395w-21(c).

It is true that some language in § 1395w-21(a) & (c) suggests that an enrollee must make an affirmative, individual decision to enroll in a PFFS plan. However, § 1395w-21(c)(1) also explicitly empowers the Secretary of Health and Human Services to "establish a process through which elections . . . are made and changed, including the form and manner in which such elections are made and changed." The Secretary, through the Centers for Medicare and Medicaid Services (CMS),[9] has established such processes in its Medicare Managed Care Manual. The Manual provides that:

> CMS is providing a process for group enrollment into an employer group or union sponsored MA plan. CMS will allow an employer group or union to enroll its retirees using a group enrollment process that provides CMS with any information the employer group or union has on other insurance coverage for the purposes of coordination of benefits. MA organizations must adhere to the guidelines outlined in § 40.1.8, as well as all other program requirements, in developing and implementing this process.

CMS, MEDICARE MANAGED CARE MANUAL, § 20.4.8, "Group Enrollment for Employer or Union Sponsored Plans" (Doc. Ent. 307-3 at 10-11; Doc. Ent. 427-3 at 10-11; Doc. Ent. 231-3 at 10-11).

Section 40.1.8, in turn, provides that

> The group enrollment process must include notification to each beneficiary as follows:
> • All beneficiaries must be notified that the group intends to enroll

---

[9] CMS, formerly known as the Health Care Finance Administration, is the entity within the Department of Health and Human Services responsible for administering the Medicare program. *See Bellevue Hosp. Ctr. v. Leavitt*, 443 F.3d 163, 168 (2d Cir. 2006).

- them in a MA plan that the group is offering; and
- The beneficiary may affirmatively opt out of such enrollment; the process to opt-out; and any consequences to group benefits opting out would bring; and
- This notice must be provided not less than 30 calendar days prior to the effective date of the beneficiary's enrollment in the group sponsored MA plan.

*Id.*, § 40.1.8, "Group Enrollment for Employer or Union Sponsored Plans" (Doc. Ent. 307-3 at 13; Doc. Ent. 427-3 at 13; Doc. Ent. 231-3 at 13). Thus, under § 1395w-21, as implemented by the Secretary of Health and Human Services through CMS, TRW may enroll all class members in the Humana PFFS plan as part of the group enrollment process, so long as the class members are provided both notice of TRW's intention to do so and an opportunity to opt-out of the Humana PFFS plan. Assuming that TRW complies with these requirements, its group enrollment of the class members does not violate federal law.[10]

### 3.   *Plaintiffs' Remaining Reasons for Opposing the Change*

Plaintiffs' remaining reasons for opposing TRW's proposed change in Administrator are without merit.

First, plaintiffs argue that if the change is allowed, class members may be denied treatment or required to pay the cost for care because some doctors may not participate in the Humana PFFS plan. Doc. Ent. 302 at 18; Doc. Ent. 225 at 18; Doc. Ent. 421 at 15-16. However, this is equally true under the current Administrator. If a treating physician chooses not to bill Meritain (the current administrator), the class member must complete a claim form and submit it to Meritain or TRW for

---

[10] Plaintiffs point out that as of August 27, 2007, CMS had not permitted Humana to renew its marketing efforts. Doc. Entries 308 at 4 / 428 at 4 / 232 at 4. In an August 27, 2007 electronic mail, "seven health plans who market [PFFS plans] agreed to voluntarily stop all marketing activities until CMS determined they were compliant with CMS marketing requirements." A review was still being scheduled with Humana. Doc. Entries 308-2 at 2 / 428-2 at 2 / 232-2 at 2.

payment.[11] This would remain the same under the Humana PFFS plan.[12] And like under the current Administrator, under the Humana PFFS plan there is no network, and a class member may choose any provider.[13] Thus, a change in Administrator does not effect any change in the benefits available to class members.

Second, plaintiffs argue that there remains uncertainty as to the viability of the MA program in general, and PFFS plans specifically. Doc. Ent. 302 at 19; Doc. Ent. 225 at 19-20; Doc. Ent. 421 at 17. However, should such plans become unviable through legislative change or for other reasons, TRW will still be obligated to provide the level of benefits guaranteed by the settlement agreements. Presumably, another change of Administrator would be required if the Humana PFFS plan could no longer be offered or provide the level of benefits guaranteed by the settlement agreement. This would not, however affect the level of benefits the class members receive, and in any event speculation regarding the viability of PFFS plans without more is insufficient to conclude that the change in Administrator would not be fair, efficient, and professional, which is all the settlement agreements require. *See* Doc. Entries 302-3 at 30 (§ 15.1) / 421-3 at 26 (§ 14.1) / 225-3 at 26 (§ 17.1).

Finally, plaintiffs argue that the PFFS plan results in a net loss to taxpayers, and that TRW should not be allowed to shift its obligations under the settlement agreements to taxpayers. Doc.

---

[11]"If a provider is not willing to bill Meritain (as now) or Humana (as proposed), the retiree must simply fill out a claim form and submit it for payment to Humana and/or TRW. Doc. Entries 306 at 10 / 426 at 10 / 230 at 10 (TRW's August 6, 2007 filing).

[12]"If a provider accepts Medicare but does not accept Humana's payment terms, the individual may have to pay the provider and submit for reimbursement directly from Humana." Doc. Entries 301-14 ¶ 8 / 420-14 ¶ 8 / 224-14 ¶ 8 (Sandrick Affidavit).

[13]"With the Humana PFFS system, with no networks, a Class Member, just as now, may choose any provider they wish." Doc. Entries 306 at 10 / 426 at 10 / 230 at 10 (TRW's August 6, 2007 filing).

Ent. 302 at 18-19; Doc. Ent. 225 at 18-19; Doc. Ent. 421 at 16-17. As a factual matter, the contention that PFFS plans result in a net loss to taxpayers is not necessarily so. Under a PFFS plan, the administrator receives a flat rate fee from the Centers for Medicare and Medicaid Services (CMS) regardless of the actual Medicare-covered services used by enrollees.[14] The PFFS plan thus shifts the risk from CMS to the administrator of the PFFS plan. In some cases this may result in a net loss to taxpayers, but in cases where enrollees have Medicare-covered claims which exceed the flat rate paid to the administrator, it is the administrator who will bear the added financial burden.

Further, TRW is not shifting anything to the taxpayers. The Medicare-covered services which are borne by the administrator of the PFFS plan are services which would be covered by Medicare even without participation in a PFFS plan. All that TRW is "shifting" is the responsibility for processing and paying Medicare claims as an administrative matter. In any event, as a legal matter Congress has determined that PFFS plans constitute sound public policy, whether for fiscal or other reasons. This Court has no basis to second guess Congress's policy judgment.

**C.**     *Conclusion*

In view of the foregoing, the Court concludes that the proposed change in Administrator is not barred by the terms of the settlement agreements (Section I.B.1), nor is it barred by federal law so long as TRW provides notice and an opportunity for class members to opt out consistent with 42 U.S.C. § 1395w-21 and the process implementing that section set out in CMS MEDICARE MANAGED CARE MANUAL §§ 20.4.8, 40.1.8 (Section I.B.2). Further, the Court concludes that remaining

---

[14] "Medicare pays an amount of money for your care every month to these private health plans, whether or not you use services." Doc. Ent. 301-16 at 5 / Doc. Ent. 420-16 at 5 / Doc. Ent. 224-16 at 5 ("Medicare & You 2007").

reasons offered by plaintiffs' for opposing the change in Administrator are without merit (Section I.B.3).

**II.    ORDER**

Accordingly, and with the understanding that TRW will comply with §§ 20.4.8, 40.1.8 and will assure that all class members are provided the benefits guaranteed them by the settlement agreements, it is hereby ORDERED that TRW's motions for change in administrator in each of these cases (Doc. Entries 301 / 420 / 224) are hereby GRANTED.  It is further ORDERED that plaintiffs' motions to enforce the settlement agreement (Doc. Entries 302 / 421 / 225) are hereby DENIED to the extent they seek an Order prohibiting TRW from changing the Administrator to the Humana PFFS plan.

The attention of the parties is drawn to FED. R. CIV. P. 72(a), which provides a period of ten days from the date of this Order within which to file any objections for consideration by the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).

IT IS SO ORDERED.


                                        s/ PAUL J. KOMIVES
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE

Dated: December 30, 2008


I hereby certify that a copy of the foregoing document was served upon counsel of record on December 30, 2008, by electronic and/or ordinary mail.

                                        S/William F. Lewis
                                        Case Manager