UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GOLDEN, *et al*.,

                Plaintiffs,              Case No. 2:93-cv-40530
                                              District Judge Arthur J. Tarnow
v.                                         Magistrate Judge Anthony P. Patti

KELSEY HAYES CO., *et al*.,

                Defendants.
_____/

## ORDER GRANTING IN PART PLAINTIFF *GOLDEN* RETIREE COMMITTEE'S REQUEST FOR DISCOVERY AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART THE INJUNCTIVE RELIEF SOUGHT IN *GOLDEN* RETIREE COMMITTEE'S MOTION TO REINSTATE ITS MOTION TO ENFORCE THE *GOLDEN* SETTLEMENT AGREEMENT (ECF No. 587)

**I.     RECOMMENDATION**:  The Court should **GRANT IN PART** and

**DENY IN PART** the injunctive relief sought in Plaintiff the *Golden* Retiree

Committee's motion to reinstate its original motion (ECF No. 535) to enforce the

*Golden* Settlement Agreement (ECF No. 587).  In addition, *Golden's* request for

discovery to determine the extent to which Defendant (herein referred to as TRW)

has violated the Settlement Agreement, if it all, is **GRANTED IN PART**, but its

request for attorney fees is **DENIED WITHOUT PREJUDICE**.

**II.     REPORT**

      **A.     Factual and Procedural Background**

"As explained in the Court's November 8, 2016 order granting Plaintiff's motion to enforce settlement and denying their motion for contempt: 'The cases at issue arose from three separate class actions between [TRW] and some of its retirees, former employees and/or their surviving spouses.  Ultimately, settlement agreements were reached which guaranteed, *inter alia*, that health care benefits would be fully paid by [TRW], and provided to Plaintiffs for life.'"  (ECF No. 590, PageID.6324-6325) (quoting ECF No. 531, PageID.4377).)  In its Final Judgment, the Court ordered TRW to "comply with the terms of the Settlement Agreement," and retained "continuing jurisdiction over all parties hereto for the purposes of enforcing and administering the Settlement Agreement."  (ECF No. 414, PageID.14, 16.)  The instant motion is brought solely by the *Golden* Retiree Committee (*Golden*) on behalf of the Gunite Class Members.

### 1.    Motion to Enforce

On November 17, 2017, *Golden* filed a motion to enforce the *Golden* Settlement Agreement, which requires TRW's compliance with the Gunite Health Care Benefit Plan.  (ECF No. 535, PageID.4422.)  In so doing, it alleged that the Gunite Plan contains a Basic Hospital Medical Surgical Plan with no lifetime maximum limit on expenses for services rendered, as well as a supplemental Major Medical Plan with a $50,000 lifetime maximum limit on expenditures.  According to these plaintiffs, TRW breached the Gunite Plan and, thus, the *Golden* Settlement

2

Agreement, by applying the Major Medical lifetime maximum to expenses for services rendered to Mr. S, a *Golden* Class Member, that should have been covered under the Basic HMS Plan.  (ECF No. 535, PageID.4423, 4442.)  To remedy the alleged breach, *Golden* requested that the Court enter an injunction requiring TRW to: (1) comply with the *Golden* Settlement Agreement; (2) respond to discovery requests seeking information regarding the extent of the violation; and (3) pay attorney fees and costs.  (ECF No. 535, PageID.4424-4425.)

On January 11, 2018, following a telephonic status conference the day before, during which TRW acquiesced to *Golden's* interpretation of the Gunite Plan—that the lifetime maximum limitation does not apply to services covered by the Basic HMS Plan (ECF No. 554-2, PageID.5698-5700)—the Court entered an order holding the motion to enforce the settlement agreement (ECF No. 535) in abeyance pending TRW's resolution of the issues raised within 60 days (ECF No. 543; ECF No. 554-2, PageID.5706).  At the telephonic status conference, TRW's counsel informed the Court that TRW had directed Meritain, its benefits administrator, to correct the claims Mr. S had submitted after December 2017 that should not have been subject to the lifetime maximum, and to "go back through all of the other members of the class and recalculate those claims if there were any that were denied because of this lifetime maximum benefit."  (ECF No. 554-2, PageID.5699-5700.)  In response, *Golden's* counsel clarified that six or seven

Gunite Class Members beyond Mr. S had claims for services denied due to the "application of this lifetime maximum from major medical to basic medical." (ECF No. 554-2, PageID.5700-5701.)

Nearly five months later, on June 8, 2018, TRW's counsel wrote to the Court to report its progress on addressing the issues raised in *Golden's* motion to enforce the settlement agreement and discussed in the Court's January 11, 2018 order. (*See* ECF No. 549.) She indicated in the letter that Meritain had undertaken a review to ensure that no claims for services rendered under the Basic HMS Plan would be denied under, or subject to, the lifetime maximum benefit limitation, and stated:

> In order to adjust properly any claims that are affected by TRW's decision not to interpret the Basic Plan as requiring a Lifetime Maximum Benefit Limit, Meritain also has to determine whether any claims should be transferred from the Major Medical Plan to the Basic Plan. To do that, Meritain must review each claim, and each total in the two Plans for each of the seven Retirees who "bumped up" against the maximum as previously interpreted to apply to the Basic Plan. If such a claim in fact should be covered under the Basic Plan and not the Major Medical Plan, that claim has to be transferred and applied to the unlimited Basic Plan. If that transfer then means that the retiree no longer has exceeded the maximum limit under the Major Medical plan, previous claims must be adjusted and, if appropriate, covered when, in the past, they exceeded the Major Medical limit.

(ECF No. 549, PageID.5551-5552.)

## 2.    The 2018 motion to vacate

4

Apparently unsatisfied with TRW's progress, on July 6, 2018, *Golden* filed a motion to vacate the Court's January 11, 2018 order holding the original motion to enforce the settlement agreement (ECF No. 535) in abeyance, requesting that the Court enter an order:

> (1) compelling TRW to immediately process all claims improperly processed under the Major Medical Plan and therefore wrongly applied to the lifetime maximum; (2) enjoining TRW from doing so in the future; (3) compelling TRW to recalculate the lifetime maximum for each Class Member; (4) compelling TRW to provide documentation verifying compliance with the Gunite Plan Settlement Agreement, and above orders; (5) compelling TRW and Meritain to produce documents in response to the attached subpoena[1]; and (6) awarding reasonable attorney fees and costs. (ECF No. 554, PageID.5668.)

However, following another status conference, the Court entered an order on September 19, 2018, noting that *Golden* had agreed to withdraw, without prejudice, its original motion to enforce the settlement agreement (ECF No. 535) and, accordingly, denying as moot *Golden's* motion to vacate the order holding that original motion in abeyance.  (ECF No. 571, PageID.5926.)  These actions were taken based on TRW's assurance that it would "provide Plaintiffs with the Protected Health Information ('PHI') related to their lifetime maximum benefits' claims within **40 days** of the entry" of the Court's order.  (ECF No. 571, PageID.5925-5926) (emphasis in original).  Both parties agree that TRW provided

---

[1] The subpoena referenced is attached as Exhibit 4 to the motion.  (ECF No. 554-5.)

5

some responsive documents on November 2, 2018.  (See ECF No. 587,

PageID.6161; ECF No. 588, PageID.6287.)

### 3.    Alleged deficiencies and non-compliance

On January 18, 2019, counsel for *Golden* wrote to TRW's counsel, outlining

what *Golden* believed to be deficiencies with TRW's document production and,

thus, proof of non-compliance with the Gunite Plan and *Golden* Settlement

Agreement, and with reimbursement of Mr. S's claims that TRW had incorrectly

processed.  (ECF No. 587-2, PageID.6185-6196.)  Specifically, *Golden's* counsel

stated, "Unfortunately, we have had to expend a great amount of time reviewing

and interpreting the Meritain website as to Mr. [S], and comparing the information

there with the Medicare EOBs we sent to you in May 2018, to determine what is

still owed and where there are questions[,]" and "TRW's production of documents

showing *balances owing* for three of the four Gunite Class Members identified as

hitting the Major Medical 'lifetime maximum' demonstrates that TRW is not

serious about rectifying its mistakes[.]"  (ECF No. 587-2, PageID.6168, 6195.)

Counsel for TRW responded on February 2, 2019, that it would review with

Meritain the issues raised, and the attorneys for the parties continued to

communicate in this vein for the next several months.  On April 12, 2019,

*Golden's* counsel sent correspondence identifying what *Golden* asserted to be

improperly processed claims for two deceased Class Members, Mrs. R. and Mrs.

N, to which TRW's counsel responded that Meritain had found, adjusted, and paid additional amounts to providers for some of the services identified, but was still working through others.  (ECF No. 587-4, PageID.6202.)  Further, she identified what TRW perceived to be an issue wholly unrelated to the lifetime maximum, stating:

> [Y]our letter provided information about bills from doctors and providers from which Meritain has not received claims; your letter is the first time that certain services have been brought to the attention of Meritain.  Typically, without a claim (in the form of an invoice from the provider), Meritain does not know of the claim and cannot make a payment to the provider.

(ECF No. 587-4, PageID.6202.)

Then on June 13, 2019, in another letter to *Golden's* counsel, counsel for TRW explained that TRW had directed Meritain to undertake exceptional measures to process claims from Mr. S for which Meritain had *never received* bills from the service providers.  (ECF No. 587-6, PageID.6210-6212.)  Further, with regard to Mrs. C, Mrs. R, and Mrs. N, counsel stated, "The claims of these three retirees were researched and patient responsibility has been reduced to zero, either by confirming that was the case or by adjusting and making an additional payment to a provider."  (ECF No. 587-6, PageID.6212.)  Following a response in late June in which *Golden's* counsel expressed dissatisfaction with TRW's document production and processing of claims (ECF No. 587-7, PageID.6215-6220), *Golden's* counsel indicated in a July 8, 2019 letter, that she planned to move again

7

to reinstate *Golden's* original motion to enforce the Settlement Agreement (ECF

No. 587-7, PageID.6226).

### B.   Instant Motion

On August 29, 2019, *Golden* followed through and filed the instant motion

on behalf of the Gunite Class Members to reinstate its original motion (ECF No.

535) to enforce the *Golden* Settlement Agreement.  (ECF No. 587.)  In the attached

brief, *Golden* summarizes its arguments as follows:

> Despite repeated demands by the Retiree Committee, and repeated
> intervention by this Court, TRW still refuses to identify, reprocess and
> pay all of [the] claims of Gunite Class Members that were wrongly
> denied based on the wrongful application of the Major Medical Plan
> "lifetime maximum" to Basic Medical Plan benefits.  TRW has
> continually refused to provide the Retiree Committee with the
> documents and other information it needs to determine the extent of
> TRW's remaining violations of the Settlement Agreement.  Without
> an Order enforceable by contempt, TRW will simply continue to
> respond piecemeal to the Retiree Committee's demands, ensuring that
> this matter is never finally resolved.

(ECF No. 587, PageID.6167.)  Further, it asserts that TRW's compliance with the

Settlement Agreement requires TRW's production of documents showing all

claims of Gunite Class Members that Meritain improperly denied and claims

Meritain reprocessed and paid.  (ECF No. 587, PageID.6177.)

TRW responded on September 12, 2019, arguing that *Golden's* motion is

based not on Meritain's failure to reprocess claim related to the lifetime maximum,

as "TRW voluntarily resolved the 'lifetime maximum' issue in Plaintiffs' favor,

and reprocessed all affected claims in 2018," but rather on arguments first raised in 2019 regarding claims for services performed during 2016 and 2017 that, upon investigation, "were deficient in one of two ways: (1) either the provider (a doctor, for example) had never sent a bill to Meritain, or (2) the provider had never given Meritain any information regarding Medicare's payment as primary payer."  (ECF No. 588, PageID.6280.)[2]  In so doing, it cites the 2019 correspondence between the parties' attorneys, outlined in detail above.  (ECF No. 588, PageID.6287-6292.) Thus, TRW asserts, *Golden's* motion to reinstate its motion to enforce the *Golden* Settlement Agreement should be denied because: (1) "TRW is not imposing a lifetime maximum on Basic Medical Plan benefits," and the "concerns raised by [*Golden's*] counsel have no relation to the lifetime maximum issue"; and (2)

---

[2] Further, TRW states:

> In an extraordinary effort to resolve this matter, TRW asked Meritain to make an exception to the industry standard claims process that requires providers to submit bills to the insurer in order for the insurer to process [sic] payment.

> *   *   *

> Nothing in the Plans or in the parties' settlement agreement required TRW to take these actions.  Ignoring TRW's extraordinary efforts, Plaintiffs have brought a motion asking the Court to find that TRW violated the parties' settlement agreement.  No such violation exists, and Plaintiffs' motion should be denied.

(ECF No. 588, PageID.6281.)

*Golden* has made no showing that injunctive relief is necessary to prevent irreparable harm, and would be inappropriate because any harm would be compensable with an award of money damages. (ECF No. 588, PageID.6292-6294.)

On April 22, 2020, the Court struck *Golden's* reply brief (ECF No. 589) by text-only order for exceeding the Court's page limitations, but accepted and has closely considered *Golden's* February 3, 2020 supplemental brief in support of the motion to reinstate (ECF No. 594). In it, *Golden* adds factual assertions related to TRW's actions and correspondence between the parties after the filing of the instant motion. Further, it states that although TRW produced, on October 9, 2019, 143 Explanation of Benefits (EOB) forms showing payments made to three previously unidentified Gunite Class Members as well as 103 EOBs showing additional claim payments to Mrs. N., Mrs. R., and Mrs. C, *Golden* had been requesting such information since December 2017. (ECF No. 594, PageID.6379-6380.) Accordingly, *Golden* asserts, the Court should:

> [E]nter a precise Order requiring TRW to comply with the terms of the Gunite Health Care Plan, one that enjoins TRW from applying the limitations of the Major Medical Plan – the annual deductible and co-payment and the $50,000 lifetime maximum – to the Basic Hospital, Medical and Surgical Plan; that requires TRW to calculate the "lifetime maximum" based only on Major Medical Plan claim payments; that requires TRW to process outpatient surgery and related procedures covered by the Basic HMS Plan as benefits under the Basic HMS Plan; and that requires that, in the future, TRW fully comply with any reasonable information and documents [sic] requests

10

> from the Retiree Committee relating to the administration of the
> Gunite Health Care Plan.

(ECF No. 594, PageID.6384.)   *Golden* also requests attorney fees, asserting that

TRW's alleged history of non-compliance forced it to file the instant motion to

obtain TRW's compliance with the Settlement Agreement.  (ECF No. 594,

PageID.6385.)

At a hearing on April 22, 2020, *Golden's* counsel indicated that the Court

should consider the above-quoted portion of the supplemental brief, plus attorney

fees, as the entirety of *Golden's* requests for relief regarding the instant motion,

and that *Golden* wants a precise order in place so that if TRW violates the *Golden*

Settlement Agreement, the Court may hold TRW in contempt.  Counsel further

argued that to determine the full extent of TRW's non-compliance, *Golden* needs

documents responsive to the November 15, 2017 subpoena issued to Meritain,

which was attached to its July 6, 2018 motion to vacate the order holding *Golden's*

motion to enforce the settlement agreement in abeyance (ECF No. 554-5).

Counsel for TRW made arguments consistent with those made in TRW's

response brief (ECF No. 588) – that the lifetime maximum issue has been resolved,

and that the complaints of the instant motion instead relate to services for which

TRW never received claims.  Further, she objected to *Golden's* discovery requests

as overbroad and onerous.

In response to the Court's request at the hearing that the parties provide additional correspondence since the filing of the last pleading in February, and a stipulation as to the ten Class Members considered the highest "Lifetime Maximum Accumulators" to assist in narrowing the scope of the discovery requests, the parties jointly filed a supplement containing the information requested on April 29, 2020. (ECF No. 598.) This additional correspondence relates in large part to reimbursement for wound debridement services performed on Mr. S, for which TRW's counsel provided an explanation of error and stated, "[G]oing forward Mr. [S's] claims for outpatient wound debridement services will be processed under the Basic Plan, and will not be applied toward the Major Medical Plan lifetime maximum figure." (ECF No. 598-2, PageID.6446; *see, generally*, ECF Nos. 598-2, 598-3, 598-4, 598-5.)

## C.    Standards

"[A] district court retains jurisdiction to enforce a settlement agreement if it either (1) has language in the dismissal order indicating its retention of jurisdiction, or (2) incorporates the terms of the settlement agreement into the dismissal order." *Hehl v. City of Avon Lake*, 90 F. App'x 797, 801 (6th Cir. 2004). Here, the Court retained such jurisdiction. (ECF No. 414, PageID.16.)

"A plaintiff who seeks a permanent injunction must demonstrate: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) that

12

considering the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that it is in the public's interest to issue such an injunction." *American Auto Ass'n v. Dickerson*, 995 F.Supp.2d 753, 757 (E.D. Mich. 2014).

A district judge may not designate a magistrate judge to hear and determine a motion for injunctive relief.  28 U.S.C. § 636(b)(1)(A).  Accordingly, I will issue a recommendation regarding *Golden's* requests that the Court enjoin TRW from imposing the lifetime maximum on Basic HMS Plan services and require TRW to calculate the lifetime maximum based only on Major Medical Plan claim payments.  (ECF No. 594, PageID.6384.)

### D.  Discussion

#### 1.  Discovery

Again, *Golden* seeks documents responsive to the requests made in its November 15, 2017 subpoena to Meritain, previously attached to its July 6, 2018 motion to vacate the order holding *Golden's* original motion to enforce the settlement agreement in abeyance.  (ECF No. 554-5.)  The subpoena contains 13 separate document requests, all seemingly related to application of the lifetime maximum.

Neither party cites any law regarding post-judgment discovery in its briefs for the instant motion, but both did so in their briefs for the prior motions.  TRW, for example, referenced Fed. R. Civ. P. 69(a)(2), and *United States v. Conces*, 507

F.3d 1028, 1034 (6th Cir. 2007), to assert that the "typical contexts in which courts permit post-judgment discovery are (a) for collection on a money judgment; or (b) where the discovery was specifically permitted as a part of the district court's final judgment[,]" and that neither exists here.  (ECF No. 567, PageID.5891-5894.) *Golden*, in contrast, argued that "[c]ourts generally have continuing jurisdiction to require discovery, even where the 'case was long ago litigated to settlement[,]'" citing *Valassis Commc'ns, Inc. v. News Ameriva Inc.*, No. 16-10240, 2014 WL 2095354, at *2 (E.D. Mich. May 20, 2014), and *RAM Produce Distributors, LLC v. Moceri Produce, Inc.*, No. 08-13319, 2010 WL 11542090, at *2 (E.D. Mich. Sept. 3, 2010).

Irrespective of these competing arguments, however, the Court explicitly retained jurisdiction to enforce and administer the *Golden* Settlement Agreement (ECF No. 414, PageID.16), and finds that it cannot verify the extent of TRW's non-compliance with the lifetime maximum interpretation of the Gunite Plan that the parties agreed to in January 2018 (ECF Nos. 543, 554-2), if any, on the basis of what has been produced before it.  Moreover, the Court has previously crossed this bridge and permitted post-judgment discovery in the case, and sees no reason to have scruples about doing do so now.  (ECF No. 565.)  Furthermore, as provided in the Court's September 19, 2018 order, TRW agreed to the production of certain discovery related to *Golden's* "lifetime maximum benefits' claims within **40 days**

of the entry" of the order for six affected Class Members in exchange for *Golden's*

withdrawal of its original motion to enforce the settlement agreement. (ECF No.

571, PageID.5925-5926) (emphasis in original.) Although TRW's counsel

indicated at the motion hearing that TRW had fulfilled its obligation, the Court

sees no reason it cannot do the same for the ten Class Members the parties have

listed in their jointly filed supplemental brief, which, as discussed at the hearing,

was intended to provide a proper sampling of those Class Members most at risk of

having the maximum benefit applied against them. (ECF No. 598). The Court was

told at the hearing that only 70 Class Members still survive at this time *in toto*.

Accordingly, to the extent it has not already done so, utilizing the

stipulations in the parties' April 29, 2020 supplemental brief (ECF No. 598,

PageID.6441), as well as *Golden's* November 15, 2017 subpoena to Meritain (ECF

No. 554-5), the Court **ORDERS** that, on or before **June 23, 2020**, TRW produce,

for the Class Members identified as the top ten "Lifetime Maximum

Accumulators": (1) all EOBs (or a spreadsheet with the same information) showing

claims that were denied on the basis that they had reached their lifetime maximum

(Subpoena Request 1, ECF No. 554-5, PageID.5722); (2) all EOBs (or a

spreadsheet with the same information) showing that claims submitted for services

covered under the Basic HMS Plan were paid at less than 100% by Meritain

15

(Subpoena Requests 4-11, ECF No. 554-5, PageID.5722-5723)[3]; and (3) "[a]ll plan documents used by Meritain to determine payment for claims submitted" (Subpoena Request 12, ECF No. 554-5, PageID.5723).  The Court believes that such discovery, as limited to the top ten accumulators, will not overburden TRW, *see* Fed. R. Civ. P. 26(b)(2)(C), and that once these documents are produced, past or continuing issues related to imposition of the lifetime maximum, if any, will be exposed to *Golden*, TRW and, ultimately, the Court.

However, the Court **DENIES** Subpoena Requests 2 and 3 (ECF No. 554-5, PageID.5722), as the parties' stipulation regarding the top ten Lifetime Maximum Accumulators satisfies both, and **DENIES** Subpoena Request 13 (ECF No. 554-5, PageID.5723), as it is cumulative of the requests for discovery granted above.  *See* Fed. R. Civ. P. 26(b)(2)(C)(*i*).

### 2.    Injunctive Relief

*Golden* also requests injunctive relief, asserting that the Court should:

---

[3] The Court assumes that Requests 4-11 in the subpoena are directed at determining whether TRW and Meritain have processed claims for services covered under the Basic HMS Plan as Major Medical Plan services subject to the lifetime maximum.  However, beyond simply stating in the instant motion that it "incorporates by reference the facts set forth in that Motion (R. 535, at Pg. ID 4422-4425, 4432-4443)," (ECF No. 587, PageID.6160.)  *Golden* produced with this motion no plan documents or other evidence identifying those services covered under the Basic HMS and Major Medical Plans respectively, and the Court will not oblige the invitation to search for such information in a case nearly 30 years old with thousands of docketed pages.

16

> [E]nter a precise Order requiring TRW to comply with the terms of
> the Gunite Health Care Plan, one that enjoins TRW from applying the
> limitations of the Major Medical Plan – the annual deductible and co-
> payment and the $50,000 lifetime maximum – to the Basic Hospital,
> Medical and Surgical Plan; that requires TRW to calculate the
> "lifetime maximum" based only on Major Medical Plan claim
> payments; that requires TRW to process outpatient surgery and related
> procedures covered by the Basic HMS Plan as benefits under the
> Basic HMS Plan; and that requires that, in the future, TRW fully
> comply with any reasonable information and documents [sic] requests
> from the Retiree Committee relating to the administration of the
> Gunite Health Care Plan.

(ECF No. 594, PageID.6384.)

As TRW's counsel emphasized at the April 22, 2020 motion hearing, TRW acquiesced to *Golden's* interpretation of the Gunite Plan—that the lifetime maximum does not apply to claims for services covered under the Basic HMS Plan—at the January 10, 2018 status conference (ECF No. 543), telling the Court that, "TRW made the decision to go ahead and have the administrator treat this as though there were no lifetime maximum benefits for that kind of claim."  (ECF No. 554-2, PageID.5699.)  This concession not only leaves *undisputed* the asserted prohibition against a lifetime maximum being applied to Basic HMS Plan benefits, but contains *an assurance* to both the Class Members and to the Court that TRW will conform to that prohibition going forward.  And again, at the most recent hearing, TRW's counsel conceded that there was "no reason not to declare" that the lifetime maximum is not to be applied to the Basic HMS Plan benefits going forward, while at the same time arguing against an actual order to that effect.  Yet

17

TRW has failed to show the Court where, unlike with Major Medical benefits, there was any contractual basis for its prior misapplication of the lifetime maximum the Gunite Class Members' Basic HMS Plan benefits.  In fact, the record appears to be undisputed on this point, *i.e.,* that there is "no lifetime maximum" under the Gunite Basic HMS Plan.  (Champagne Decl., ECF No. 536, PageID.4674, ¶ 33; *compare* ECF No. 538, PageID.5087, TRW arguing in response that "a lifetime maximum applies to *major medical benefits*." (emphasis added).)

In order to clarify an issue about which neither party seems to disagree, but which has absorbed an inordinate amount of the Court's time, and to avoid further squabbling about this issue, the inapplicability of the lifetime maximum to the Basic HMS Plan benefits and TRW's promise to refrain from applying the lifetime maximum to Basic HMS Plan benefits, must be definitively declared and made enforceable.  I recommend that the Court enter an order enjoining TRW from applying the lifetime maximum as it appears in the Gunite Plan's Major Medical Plan to claims for services covered under the Basic HMS Plan and, thus, requiring TRW to calculate the lifetime maximum based only on Major Medical Plan claim payments.  Contrary to the argument advanced by TRW, these elderly and rapidly dying class members, many or most of whom are now in their 90s, do not have an adequate remedy at law as to this issue.  If TRW continues to apply a maximum

lifetime ceiling where none exists, their only adequate remedy is to obtain the

cessation of this conduct, so that their Basic HMS Plan Benefits claims get paid

and their basic healthcare, in turn, is assured.  They cannot be expected to come to

the Court for reimbursement of wrongfully withheld benefits *ad hoc* and *ad*

*infinitum*.

I do not, however, recommend that the Court require TRW to process

outpatient surgery and related procedures as benefits under the Basic HMS Plan, or

create a general obligation to comply with future "reasonable" information and

document requests because, again, beyond "incorporating" facts from the original

motion to enforce the settlement agreement into the instant motion (ECF No. 587,

PageID.6160), *Golden* has produced little to establish that outpatient surgery is part

of the Gunite Basic HMS Plan, as opposed to the Major Medical Plan; nor has it

adequately developed an argument or provided the Court information sufficient to

establish that issues beyond the application of the lifetime maximum have been a

problem or that TRW has otherwise breached the Settlement Agreement, so as to

warrant a mandate of broad future discovery.  In fact, TRW has presented

convincing arguments to the contrary, explaining that it "voluntarily resolved the

'lifetime maximum' issue in Plaintiff's favor" and that the other failures to make

payments questioned by TRW were precipitated either by providers not sending

bills, or lack of information regarding primary payments by Medicare.  (ECF No.

588, PageID.6280.)  Should discovery be needed in the future to enforce the

Settlement Agreement, *Golden* may request such discovery, and bring any disputes

to the Court, if necessary.  It has not been shy about doing so up to this point.

Finally, the Court **DENIES WITHOUT PREJUDICE** *Golden's* request for

attorney fees based on its assertion that it was forced to file the instant motion after

years of TRW's misapplication of the lifetime maximum and insufficient

document production.  As things currently stand, with the evidence before it and

without the benefit of the discovery just ordered, the Court is unconvinced that

TRW has continually failed to comply with the Settlement Agreement by

misapplying the lifetime maximum.

### E.     Conclusion

In sum, the Court should **GRANT IN PART** and **DENY IN PART** the

injunctive relief sought in Plaintiff the *Golden* Retiree Committee's (*Golden's*)

motion to reinstate its original motion (ECF No. 535) to enforce the *Golden*

Settlement Agreement (ECF No. 587).  In addition, *Golden's* request for discovery

to determine the extent to which Defendant (herein referred to as TRW) has

violated the Settlement Agreement, if it all, is **GRANTED IN PART**, but its

request for attorney fees is **DENIED WITHOUT PREJUDICE**.

## III.   PROCEDURE ON OBJECTIONS

### A.     Report and Recommendation

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*. If the Court determines that any objections are without merit, it may rule without awaiting the response.

**B.      Order on Discovery and Attorney Fees**

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides

a period of fourteen (14) days after being served with a copy of this order within

which to file objections for consideration by the district judge under 28 U.S.C. §

636(b)(1).

**IT IS SO ORDERED.**

Dated: May 15, 2020                          s/*Anthony P. Patti*

                                              Anthony P. Patti
                                              UNITED STATES MAGISTRATE JUDGE