UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH GOLDEN, ET AL.,

    Plaintiffs,

v.

KELSEY HAYES CO, ET AL.,

    Defendants.

_____/

Case No. 93-cv-40530

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
ANTHONY J. PATTI

**ORDER ADOPTING REPORT AND RECOMMENDATION [590]; OVERRULING DEFENDANT TRW'S OBJECTIONS TO REPORT AND RECOMMENDATION [591]; GRANTING PLAINTIFFS' MOTION FOR CONTEMPT [573]**

The cases at issue arose from three separate class actions between Defendant and some of its retirees, former employees and/or their surviving spouses. Ultimately, settlement agreements were reached which guaranteed, *inter alia*, that health care benefits would be fully paid by Defendant, and provided to Plaintiffs for life. Defendant agreed to provide prescription drug benefits to the designated recipients in accordance with the parties' settlement agreements.

Before the Court is Plaintiffs' Motion for Contempt [573] filed on May 1, 2019. Defendant TRW responded on May 15, 2019 and Plaintiffs replied on May 22, 2019. The Magistrate Judge held a hearing on the motion on July 11, 2019. On

September 20, 2019, the Magistrate Judge issued a Report and Recommendation ("R&R") [590] recommending that the Court grant Plaintiffs' motion. Defendant TRW filed Objections [591] to the R&R on October 4, 2019. Plaintiffs filed a Response [592] to Defendant TRW's objections on October 18, 2019.

For the reasons stated below, the R&R [590] is **ADOPTED**; Defendant TRW's Objections [591] are **OVERRULED**; and Plaintiffs' Motion for Contempt [573] is **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND

The Court adopts the facts of this case as set forth in the R&R:

### B. Certified Facts

1. This Court retains continuing jurisdiction over all parties in this case "for the purposes of enforcing and administering the Settlement Agreement." (*Golden* DE 414; *Fox* DE 279; and *Colby* DE 201; *see also* DE 586 at 79-80.)

2. Plaintiffs, the *Golden*, *Fox* and *Colby* Retiree Committees, have moved for an order holding TRW in contempt of the March 31, 2011 and November 8, 2016 injunctions (the "2011 Injunction" and "2016 Injunction," respectively) issued by this Court, which bar TRW from implementing and maintaining prescription drug exclusion policies. (DE 573 at 2-3.)

3. The *Golden*, *Fox*, and *Colby* settlement agreements entitle retirees and surviving spouses to lifetime health care benefits, including prescription drug benefits, continuing at the same standard agreed upon since its implementation on December 31, 1993. (DE 531, 573.)

4. The Court has previously found that TRW violated these settlement agreements four times in *Fox* and three times in *Golden* and *Colby*, enjoining them from activities in furtherance thereof. (*Fox* DE 323, 349, 369, 420; *Golden* DE 458, 479, 531; *Colby* DE 265, 286, 336.)

5. The Court's 2011 Injunction enjoins TRW from "materially reduc[ing]" the extent of plan coverage based on "medical necess[ity]," which the Court deems a "prior approval process":

> The mere fact that each settlement agreement plan only covers drugs that are medically necessary does not mean that Medco's new protocols – even though grounded in its right to a medical necessity review – cannot result in a material reduction of the level of promised plan benefits.
>
> In that regard, the Court deems the Defendant's imposition of a "prior approval" process for certain drugs that were previously available without such a coverage review to be a "new condition or requirement" that materially reduces the level of plan benefits. (DE 479 at 13-14.)

6. The 2011 Injunction then singles out other "new drug protocols" that TRW cannot implement "to the extent that they materially affect" coverage under the settlement agreements:

> [T]he Court deems the Defendant's imposition of a "prior approval" process for certain drugs that were previously available without such a coverage review to be a "new condition or requirement" that materially reduces the level of plan benefits. The Court has a similar view of Medco's other new drug protocols, which are not described in detail by the Defendant but whose very names (e.g., "preferred drug step therapy," "quantity/duration reviews," and "prior authorization reviews") suggest an

       exploratory, pre-screening process requirement that each participant must undertake before the Defendant will pay for the drug. (DE 479 at 14.)

7. Medco had been TRW's prescription benefit manager (PBM) when the 2011 Injunction was imposed. A 2012 merger of Medco and ExpressScripts, Inc. (ESI) led to ESI becoming and remaining TRW's PBM to date. (DE 479 at 7; DE 586 at 10.)

8. On January 1, 2014, TRW chose to implement a drug exclusion policy ESI proposed known as the 2014 National Preferred Formulary (NPF) which, as of 2016, grew to encompass a list of fifty-three drugs. (DE 531 at 6-7.)

9. On March 28, 2014, TRW filed a motion for an "Order Clarifying and Declaring TRW's Rights and Responsibilities Relative to the Delivery of Prescription Drug Benefits Mandated by the Settlement Agreements." (DE 480.)

10. Six days later, on April 3, 2014, Plaintiffs filed a motion for contempt based on TRW adopting ESI's NPF despite the 2011 Injunction. (DE 481.)

11. In the associated court proceedings, TRW admitted that the 2011 Injunction enjoined TRW "from implementing the prior authorization coverage review, 'preferred drug step therapy,' 'quantity/duration reviews,' and 'prior authorization reviews' that were at issue at that time." (DE 531 at 7-8; *see also* DE 516 at 5.) TRW's motion for a clarifying order was subsequently denied by the Court on November 8, 2016. (DE 531.) The Court also denied the motion for contempt, expressing its concern that its previous order was not definite and specific in its exclusion of the 2014 change instituted by TRW. (*Id.* at 14.) The Court did, however, indicate that TRW "may have violated an ambiguous order." (*Id* at 15.)

12. The Court's second injunction, the 2016 Injunction dated November 8, 2016, reiterates that TRW is enjoined from implementing ESI's policies that "unilaterally institute preapproval procedures for previously covered prescriptions,"

and further specifies that TRW is enjoined from "exclud[ing] previously covered prescription drugs, subject to a pre-authorization procedure." (DE 531.)

13. On July 19, 2018, the parties came before the Court for a hearing, placing on the record a stipulation as to a Motion to Compel discovery requested by Plaintiffs. ESI agreed to produce written communications from TRW in regard to plan and benefit changes for prescription drug coverage pertaining to class members. (DE 568.)

14. A "2015 PBM Agreement Service Addendum" was produced in discovery. This Addendum, effective January 1, 2015, between TRW and ESI "directs [ESI] to implement the selected programs attached on the Clinical Programs schedule" as of its effective date. (DE 573-4 at 2, ESI 59.) The Clinical Programs schedule explicitly indicates that ESI will "Add" "Prior Authorization" to 249 drugs and "duration/quantity management" restrictions on 21 drugs and 35 medical conditions. (DE 573-4 at 5-9, ESI 62-66.) The 2015 Addendum applies to *Golden*, *Fox*, and *Colby* class members because their TRW contract numbers – 177010 and 40280 – obtained from the first column entitled "CONTRACT NUMBER" in the table attached to Plaintiffs' brief as Exhibit E, are listed on the second page of the 2015 Addendum. (DE 573-6 at 2-8, ESI 201-07; DE 573-4 at 4, ESI 61.)

15. Also obtained in discovery was the "2016 PBM Agreement Service Addendum." This contains a prior approval list which keeps "In Place" the "Prior Authorization," "Drug Quantity Management," and "Limited Step Therapy" lists, the first two of which were implemented in the 2015 Service Addendum. (DE 573-5 at 7-8, ESI 231-32.) Moreover, the 2016 Service Addendum contains a "Prior Authorization" (PA) list titled "Compound Management PA" list, which includes Gabapentin powder (Gabapentin). (DE 573-5 at 7, ESI 231.)

16. Gabapentin is a prescription drug denied to Mr. N.P., a *Fox* Class Member, on November 15, 2016. Mr. N.P., had been obtaining this drug through a prescription from 2012 through

2015. (DE 573 at 16.) According to Defendant, Mr. N.P.'s Gabapentin prescription was (apparently) flagged and rejected pursuant to an unidentified protocol. (DE 586 at 39-41; DE 573-5, ESI 231.) TRW acknowledges that this denial "may have, in fact, violated the 2011 order[,]" but seeks to excuse the violation by noting that it only "occurred seven days after the November 8, 2016 clarifying order." (DE 586 at 53, 49.)[1] However, the 2016 Injunction "may be" irrelevant to Mr. N. P., since the preapproval had *already* been enjoined in 2011, and TRW admits that, "if he was getting it all along, then he probably shouldn't have been denied it under the status of the settlement agreement." (*Id.* at 54, 52; see also *id* at 51.) Ultimately, despite being challenged well in advance on this very point, defense counsel was unable to say at the hearing whether Mr. N.P.'s prescription was denied because of a prior authorization or safety issue. (*Id.* at 42-43.)[2]

17. It is uncontested that the "Advantage Plus PA List" from the 2016 Service Addendum also includes Xarelto. (DE 573 at 21-22.) Xarelto is a prescription drug that had originally been denied to Ms. C.A., the wife of a Golden Class Member, on the basis of a "prior authorization" being needed. (DE 546-5.) TRW characterized this as a "medical necessity" review in its brief, but conceded at oral argument that "[i]t could be based" on a step therapy, which would be a violation of the 2011 Injunction. (DE 581-2 at 2; DE 586 at 56-57.)

18. It is undisputed that the issues of prescription drug denial regarding Mr. N.P. and Ms. C.A. were fully resolved by TRW in 2017. (DE 581 at 2.)

---

[1] TRW attributes this to "human error[,]" but when asked at the hearing if the denial was, "if not in violation of the earlier injunction . . .in violation of the November 8, 2016 clarifying order, albeit only by seven days[,]" defense counsel agreed that, "I think that's probably correct, Judge, yes." (DE 586 at 51.) Apparently, "this program is one that depends a lot upon human beings getting it right" and "maybe that's the answer to understanding that something else has to occur...in writing, as to how these [protocols, appearing in ESI 231] are implemented." (*Id.* at 35, 48-49 (emphasis added).)

[2] In making my findings with respect to contempt, I find no basis for assigning fault to defense counsel. It is my distinct impression that she has her hands full with this client, having to explain and defend against its unilateral actions or inactions, through no fault of her own.

**19.** TRW has provided an e-mail dated October 2, 2017 in its response brief, indicating that ESI resolved Ms. C.A.'s denial by contacting her prescribing doctor in order to obtain "medical necessity" assurances, and that once such assurances were received the prescription was approved. (DE 581-2.)

### STANDARD OF REVIEW

The Court's review of objections to a Magistrate Judge's R&R on a dispositive motion is de novo. 28 U.S.C. § 636(b)(1)(c). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed in error' are too general." *Novak v. Prison Health Services, Inc.*, No. 13-11065, 2014 WL 988942, at *3 (E.D. Mich. Mar. 13, 2014) (quoting *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)). Ordinarily, objections that lack specificity do not receive de novo review. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). In addition, the Court may accept, reject, or modify any or all of the Magistrate Judge's findings or recommendations. FED. R. CIV. P. 72(b)(3).

"A litigant may be held in contempt if his adversary shows by clear and convincing evidence that 'he violate[d] a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *NLRB v. Cincinnati Bronze, Inc.* 829 F.2d 585, 591 (6th Cir. 1987) (citation omitted). To be held in contempt, the prior Order must be clear and unambiguous, with ambiguities being resolved in favor of the party

charged with contempt. *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006).

Plaintiffs have a heavy burden of evidence to show "by more than a mere preponderance of the evidence" that Defendants violated the injunction. *Consolidation Coal Co. v. Local Union No. 1784, United Mine Workers of Am.*, 514 F.2d 763, 766 (6th Cir. 1975). "Willfulness is not an element of civil contempt, so the intent of a party to disobey a court order is irrelevant to the validity of [a] contempt finding." *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (citation omitted).

Once Plaintiffs have met their burden, "a defendant must show 'categorically and in detail' why he or she is unable to comply with the court's order." *Id.* at 720. When evaluating a defendant's failure to comply, the Court also considers "whether the defendants took all reasonable steps within their power to comply with the court's order." *Peppers v. Barry*, 873 F.2d 967, 969 (6th Cir. 1989).

## ANALYSIS

**Objection 1:** The Magistrate Judge makes an "unfounded assumption" that Defendant continues to maintain non-compliant preapproval protocols. (ECF No. 591, PageId. 6350-51).

**Objection 3:** The R&R incorrectly concluded that the "2015 and 2016 Service Addenda violate the Court's 2016 Injunction in largely the same way that the 2011 Injunction was violated." (ECF No. 591, PageId. 6355).

**Objection 6:** The Magistrate Judge incorrectly based contempt on the assumption that the two individuals who were denied medications were "unlikely . . . the only ones." (ECF No. 591, PageId. 6358; ECF No. 590, PageId. 6346).

Because Objections 1, 3 and 6 pertain to the R&R's analysis of the extent of Defendant's liability, the Court analyzes them together. Defendant argues that the R&R assumes, without supporting evidence, that improper coverage denials are on going, despite there only being evidence of two such denials, which were promptly corrected. (ECF No. 590, PageId. 6351, 6359).

The Court finds that the R&R makes no such assumptions regarding the extent of TRW's denials of coverage. In fact, it states that "[i]t is unclear at this point whether the denial of benefits to the two class members identified thus far are merely isolated incidents or two tips of the larger iceberg." (*Id.* at 6344). Under the current system, which automatically places class members into prohibited protocols, on-going violations are a possibility, but neither the Magistrate Judge nor the Court comes to a conclusion on the matter. Defendant correctly points out that Plaintiff currently lacks evidence of further denials; however, the Court finds that this is the result of Defendant's failure provide the necessary records needed to discover

further denials. (ECF No. 573, PageID. 5938-39). Accordingly, the Magistrate Judge recommended discovery to determine the extent of the denials, but only for the purposes of determining sanctions, not contempt. (ECF No. 590, PageID. 6347). The Court agrees with this recommendation.

Regardless of possible denials waiting to be discovered, the prescription drug denials to Mr. N.P. and Ms. C.A. alone are sufficient to support a finding of contempt. Upon finding that TRW unilaterally modified its plans to exclude certain drugs from coverage, the 2011 Order enjoined TRW from implementing prescription drug protocols with an agreement between parties. (ECF No. 479, PageID. 3489, 3495). Afterwards, TRW's 2015 and 2016 Addenda incorporated the very same protocols the 2011 Order prohibited. And although there is disagreement regarding the 2011 Order's clarity, the 2016 Order is clear.

> TRW cannot unilaterally institute preapproval procedures for previously covered prescriptions, and TRW is enjoined from continuing to implement these procedures that exclude previously covered prescription drugs, subject to a pre-authorization procedure. This type of change must be the subject of a negotiated agreement between the parties, and subject to final approval by the Court.

(ECF No. 531, PageID. 4388). The directive to TRW is simple: it cannot create a new hoop for Plaintiffs to jump through in order to obtain a drug that previously had no obstacles. Defendant violated this directive through its 2016 Service Addendum which recognized a prohibited preapproval process that lead to prescription drug denials to Mr. N.P. and Ms. C.A. (ECF No. 573-5; 546-2; 546-5).

Defendant also argues that the R&R overlooked Defendant's success in resolving the two denials. It does not. While recognizing Defendant's efforts in correcting the mistakes, the R&R notes that "TRW did take a reasonable step towards compliance *ex post facto*; however, *all* reasonable steps must be taken to comply with the Court order in the first instance." (*Id.* at 6342). Because the Court finds evidence that TRW did not, in the first instance, comply with the settlement agreements and the applicable court orders, objections 1, 3, and 6 are overruled.

**Objection 2:** The R&R's prima facie finding of contempt is not reasonable, therefore, the burden does not shift to the Defendant to show its inability to comply with the Court's Orders. (ECF No. 591, PageId. 6354).

For the reasons stated above, the R&R's finding of contempt was reasonable in light of the Defendant's continued use of protocols in at least two class member's plans. Therefore, Defendant has the burden to prove why it was unable to comply with the Courts orders. Objection 2 is overruled.

**Objection 4:** The R&R incorrectly states that Defendant's Motion for a Clarifying Order [480] was denied by the 2016 Order. (ECF No. 591, PageId. 6356).

On March 28, 2014, Defendant filed a Motion for a Clarifying Order [480]. Defendant argues that this motion was not denied, but was merely denied *as moot*

by the 2016 Order because the order itself provided the clarity Defendant sought regarding the prohibition of preapproval procedures for previously covered prescriptions. (ECF No. 591, PageID. 6357). The Court agrees with Defendant's assessment that the 2016 Order clarified the 2011 Order. However, although the R&R did not explicitly state that the Defendant's motion as denied *as moot*, it does explain that the 2016 Order gave clarity by recognizing that the 2011 Order was ambiguous: "The Court's second injunction, the 2016 Injunction dated November 8, 2016, reiterates that TRW is enjoined from implementing ESI's policies that 'unilaterally institute preapproval procedures for previously covered prescriptions,' and further specifies that TRW is enjoined from 'exclud[ing] previously covered prescription drugs, subject to a pre-authorization procedure.'" (ECF No. 590, PageID 6328; ECF No. 531). Because the R&R's explanation of the 2016 Order shows that it was not misleading or incorrect due to being incomplete, objection 4 is overruled.

**Objection 7:** The R&R incorrectly requires TRW to institute a "failsafe approach" in order to avoid contempt. (ECF No. 591, PageId. 6360).

The R&R does not *require* TRW to adopt a failsafe approach to avoid contempt. It does, however, suggest that TRW *should* implement such an approach so that preapproval protocols are no longer applied to class members. The Court

joins the R&R in this suggestion. Under the current system, TRW instructs ESI to follow an addendum which applies prohibited protocols to class members, trusting that ESI will remember, without clear written guidance, not to follow the addendum's instructions and instead opt out all of the class members. This leaves only the elderly class members themselves to be a back stop for policing TRW's violations. A failsafe approach would be simple: issue a new addendum which removes class members from prohibited protocols. Short of imputing nefarious financial motives on to TRW, the Court is unsure why moving an X from the "In Place" column to the "Remove" column is an "unachievable standard," as Defendant states. (ECF No. 591, PageID. 6360-61). The settlement agreements and subsequent orders are clear. Defendant must once and for all remove barriers to full healthcare coverage for Plaintiffs as promised. Objection 7 is overruled.

## Conclusion

For the reasons stated above, the R&R [590] is **ADOPTED**; Defendant TRW's Objections [591] are **OVERRULED**; and Plaintiffs' Motion for Contempt [573] is **GRANTED**.

Accordingly,

**IT IS ORDERED** that the R&R [590] is **ADOPTED**.

**IT IS FURTHER ORDERED** that Defendant's Objections [591] are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Contempt [573] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff is **GRANTED ADDITIONAL DISCOVERY** as outlined in the R&R. (ECF No. 590, PageID. 6345-46).

**SO ORDERED**.

Dated: May 26, 2020

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge